FILED
United States Court of Appeals
Tenth Circuit

March 31, 2021

Christopher M. Wolpert
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

MTGLQ INVESTORS, LP,

      Plaintiff Counter Defendant -
Appellee,

v.

MONICA WELLINGTON,

      Defendant Counterclaimant -
Appellant,

and

THE MONICA L. WELLINGTON
DECLARATION OF TRUST, Dated
December 28, 2007; ALTURA VILLAGE
HOMEOWNERS ASSOCIATION,

      Defendants,

v.

J.P. MORGAN CHASE BANK, N.A.;
WEINSTEIN & RILEY, P.S.;
ELIZABETH V. FRIEDENSTEIN;
RUSHMORE LOAN MANAGEMENT
SERVICES, LLC,

      Counter Defendants - Appellees,

and

PROFOLIO HOME MORTGAGE
CORPORATION,

      Counter Defendant.
_____

No. 20-2000
(D.C. No. 1:17-CV-00487-KG-LF)
(D. N.M.)

# ORDER

_____

Before **HARTZ**, **McHUGH**, and **CARSON**, Circuit Judges.

_____

This matter is before the court on the appellant's petition for panel rehearing and (liberally construing footnote two of her petition) rehearing en banc. The petition for panel rehearing is denied. The petition for rehearing en banc was transmitted to all of the judges of the court who are in regular active service. As no member of the panel and no judge in regular active service requested that the court be polled, that petition is also denied.

On its own motion, the court has revised the order and judgment to be consistent with an intervening clarification in this circuit's law. The original order and judgment filed January 7, 2021 is hereby withdrawn and replaced by the attached order and judgment, which shall be filed as of today's date. The time for filing another petition for rehearing will run in accordance with Fed. R. App. P. 40(a)(1) from the entry of the revised order and judgment, but any petition for rehearing is limited to the rulings in Parts III.A. and III.B of the revised order and judgment that appellant did not challenge in the initial petition for rehearing.

Entered for the Court

CHRISTOPHER M. WOLPERT, Clerk

2

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 31, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

MTGLQ INVESTORS, LP,

      Plaintiff Counter Defendant -
Appellee,

v.

MONICA WELLINGTON,

      Defendant Counterclaimant -
Appellant,

and

THE MONICA L. WELLINGTON
DECLARATION OF TRUST, Dated
December 28, 2007; ALTURA VILLAGE
HOMEOWNERS ASSOCIATION,

      Defendants,

v.

J.P. MORGAN CHASE BANK, N.A.;
WEINSTEIN & RILEY, P.S.;
ELIZABETH V. FRIEDENSTEIN;
RUSHMORE LOAN MANAGEMENT
SERVICES, LLC,

      Counter Defendants - Appellees,

and

PROFOLIO HOME MORTGAGE
CORPORATION,

      Counter Defendant.
_____

No. 20-2000
(D.C. No. 1:17-CV-00487-KG-LF)
(D. N.M.)

**ORDER AND JUDGMENT**[*]

_____

Before **HARTZ**, **McHUGH**, and **CARSON**, Circuit Judges.

_____

Monica Wellington, appearing pro se, appeals the district court's judgment of foreclosure and sale and other rulings. We affirm.

## I.  BACKGROUND

On February 20, 2007, Wellington obtained a mortgage loan from Profolio Home Mortgage Corporation (Profolio) for the purchase of a house in New Mexico. She executed a promissory note (Note) in favor of Profolio. The Note provided that if she defaulted on her payment obligations, the Note holder could require immediate payment in full. An allonge to the Note, also dated February 20, 2007, bears an indorsement to Ohio Savings Bank. The allonge also contains an undated indorsement in blank signed by an authorized agent of Ohio Savings Bank. To secure the debt evidenced by the Note, Wellington executed and delivered a mortgage on the property to Mortgage Electronic Registration Systems, Inc. (MERS), solely as Profolio's nominee. The mortgage was recorded in the Bernalillo County Clerk's Office.

_____

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Wellington's last payment on the Note was in 2011. In January 2017, MTGLQ filed a foreclosure action in New Mexico state court, seeking both foreclosure on the property and a judgment against Wellington personally for the unpaid principal of some $125,000 plus interest, late charges, taxes, assessments, insurance, and other expenses necessary to preserve the property. MTGLQ attached to its complaint a copy of the Note and the allonge and alleged that it was in possession of the original. MTGLQ also alleged that in 2012, MERS erroneously filed a release of mortgage with the county clerk's office and soon thereafter erroneously assigned the mortgage, as Profolio's nominee, to JPMorgan Chase Bank, N.A. (JPMC). The assignment was recorded in the clerk's office. MTGLQ further alleged that in 2016, MERS assigned the mortgage to MTGLQ. Due to the recording of the allegedly erroneous assignment to JPMC, MTGLQ named JPMC as a defendant.[1]

Wellington removed the action to federal district court and filed thirteen counterclaims under the Fair Debt Collection Practices Act (FDCPA) against MTGLQ, the lawyer and law firm representing MTGLQ, and the company servicing the loan for MTGLQ, Rushmore Loan Management Services, LLC (Rushmore). She also sought declaratory relief against MTGLQ, JPMC, and Profolio. In response to

---

[1] MTGLQ also named three other defendants. The district court dismissed the claim against one of them (Wellington's unnamed spouse) and entered default judgment against the other two (a trust to which Wellington had conveyed the property and a homeowners association). Those procedural facts are immaterial to our merits disposition, but we have considered them in determining that we have jurisdiction over this appeal. *See* part II, *infra*.

3

motions to dismiss her counterclaims, Wellington amended them. After extensive motions practice, the district court dismissed Wellington's amended FDCPA counterclaims without prejudice; denied her motion for leave to further amend her counterclaims; dismissed her claim for declaratory relief against MTGLQ and JPMC with prejudice;[2] entered a stipulated judgment between MTGLQ and JPMC foreclosing JPMC's interest in the property; granted summary judgment to MTGLQ on its claims against Wellington; and entered a Judgment of Foreclosure and Sale, and Appointment of Special Master (Judgment of Foreclosure, or Judgment). Wellington appeals.

## II. APPELLATE JURISDICTION

Before addressing the merits of this appeal, we first consider our own jurisdiction. In the Judgment of Foreclosure, the district court stated that it retained jurisdiction over confirmation of the sale and, "if necessary," "assisting the purchaser at the foreclosure sale, or its successor and assigns, in obtaining possession of the property" and "entering a deficiency judgment upon approval of the Special Master's Report subsequent to the foreclosure sale." R. Vol. III at 50. The court also retained jurisdiction "for determining all other issues presented in this action and not specifically ruled on in this Judgment of Foreclosure." *Id.*

Concerned that the district court's retention of jurisdiction might affect the finality of its Judgment of Foreclosure, we ordered Wellington to file a memorandum

---

[2] In her amended counterclaims, Wellington did not seek relief against Profolio.

4

providing a basis for appellate jurisdiction.  She did so, and MTGLQ also filed a

memorandum on the issue.  Having reviewed the parties' submissions, the record,

and the relevant law, we conclude that the only matters left for the district court's

determination are ancillary to the Judgment of Foreclosure, and therefore the

Judgment is final for purposes of our jurisdiction under 28 U.S.C. § 1291.  As we

observed in *United States v. Simons*, 419 F. App'x 852 (10th Cir. 2011), it "has long

been established that 'a decree of sale in a foreclosure suit, which settles all the rights

of the parties and leaves nothing to be done but to make the sale and pay out the

proceeds, is a final decree for the purposes of an appeal.'" *Id.* at 855 (quoting *Grant

v. Phoenix Mut. Life Ins. Co.*, 106 U.S. 429, 431 (1882)).  The Supreme Court

explained in *Whiting v. Bank of United States*, 38 U.S. (13 Pet.) 6, 15 (1839), that an

"original decree of foreclosure and sale [is] final upon the merits of the controversy,"

and defendants have "a right to appeal from that decree, as final upon those merits, as

soon as it was pronounced, in order to prevent an irreparable mischief to

themselves[,] . . . without and independent of any ulterior proceedings."  *See also

N.C. R.R. Co. v. Swasey*, 90 U.S. 405, 409 (1874) (same, adding that "[t]he sale in

such a case is the execution of the decree"); *Ray v. Law*, 7 U.S. (3 Cranch) 179, 180

(1805) (stating that "a decree for a sale under a mortgage[] is such a final decree as

may be appealed from").[3]

---

[3] In a split decision, the Seventh Circuit has concluded otherwise, holding that a foreclosure judgment was not final under § 1291 because (1) the owner of the property retained statutory rights to redeem or reinstate the mortgage before a judicial sale; (2) if a judicial sale occurred, it would need to be confirmed in a further

## III. DISCUSSION

Having established our appellate jurisdiction, we turn to the four issues

Wellington raises on appeal, construing her pro se filings liberally but without acting

as her advocate, *see Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008).

### A. Real party in interest and Article III standing

Wellington first argues that because MTGLQ is not, as it claimed to be, a

limited partnership but is instead an unincorporated association, it was not a real

party in interest under Federal Rule of Civil Procedure 17 and also lacked

constitutional standing. MTGLQ argues that Wellington waived appellate review of

this issue by not raising it before the district court.[4] We conclude that we may review

judicial proceeding; and (3) the amount of any deficiency judgment could not be determined until the sale was held and the parties had an opportunity to contest its fairness. *HSBC Bank USA, N.A. v. Townsend*, 793 F.3d 771, 775-77 (7th Cir. 2015). Although similar factors are present here, we are not persuaded by the *Townsend* majority's opinion because it fails to address the Supreme Court's long-standing precedent on the issue. Indeed, the only circuit court outside of the Seventh Circuit that has considered *Townsend* sided with the dissenting opinion, which relied on that precedent, *see MSCI 2007-IQ16 Granville Retail, LLC v. UHA Corp.*, 660 F. App'x 459, 460 (6th Cir. 2016); *see also Townsend*, 793 F.3d at 784-85 (Hamilton, J., dissenting) (discussing *Whiting*, *Swasey*, *Grant*, and *Ray*). Like the Sixth Circuit, we agree with the *Townsend* dissent.

[4] MTGLQ also argues that Wellington waived this and other issues by failing to provide a sufficient record for appellate review. But MTGLQ overlooks that "[w]hen the appellant is pro se, the court prepares and dockets a record on appeal." 10th Cir. R. 10.1. And we have supplemented the record to remedy the omission of any necessary documents.

6

this issue, but our focus is extremely narrow.  To fully explain why, we must first set out the relevant procedural facts.

Wellington's argument is based on an affidavit describing MTGLQ's organizational structure that was filed in response to the district's court order to disclose the citizenship of MTGLQ's limited partner and its general partner for purposes of determining diversity jurisdiction.  *See* R. Vol. II at 165-66, 168 (order); Supp. R. Vol. I at 102-03 (affidavit).  According to the affidavit, MTGLQ is a Delaware limited partnership whose one general partner is MLQ, L.L.C., and its limited partner is The Goldman Sachs Group, Inc. (GSG).  MLQ, L.L.C. has two members:  (1) Goldman Sachs Global Holdings L.L.C. and (2) GSG.  Goldman Sachs Global Holdings L.L.C. has two members:  (1) Goldman Sachs Holding Company LLC and (2) GSG.  And the Goldman Sachs Holding Company LLC has only one member—GSG.

Because the deadline for pretrial motions had passed by the time MTGLQ filed the affidavit, Wellington moved to amend the scheduling order so she could file a motion challenging whether MTGLQ was the real party in interest under Rule 17.[5] According to Wellington's one-sentence argument, the affidavit revealed that MTGLQ's "purported 'partnership' ultimately consists of only a single party," which

[5] In relevant part, Rule 17 provides that "[a]n action must be prosecuted in the name of the real party in interest," and, subject to exceptions not applicable here, capacity to sue is determined "by the law of the state where the court is located," Fed. R. Civ. P. 17(a), (b)(3).

called into question MTGLQ's legal existence as a limited partnership. Supp. R. Vol. I at 106 n.1.

The magistrate judge denied the motion to amend the scheduling order because the affidavit stated that MTGLQ consisted of a general partner and a limited partner, and that structure met a law-dictionary definition of "limited partnership." *Id.* at 110-11. The magistrate judge also determined that Wellington had not shown good cause to revisit the court's previous determinations that MTGLQ had standing to enforce the Note. *Id.* at 110 n.1.[6]

Wellington did not object to the magistrate judge's order, but she raised the issue again in her response to MTGLQ's motion to appoint a receiver. *See* R. Vol. II at 191-95. There, she developed her argument more fully, as follows: MTGLQ ultimately consists of nothing more than a single entity—GSG—and therefore it is not a bona fide limited partnership under Delaware law.[7] Consequently, it is only an unincorporated association and lacks standing to sue under New Mexico law.[8]

---

[6] Those previous determinations did not involve the attack on MTGLQ's claim to be a limited partnership but instead concluded MTGLQ had standing because it had attached to its complaint a copy of the Note and the allonge to the Note. *See* R. Vol. I at 250; *id.* at 327. We discuss that aspect of standing in Part III.C.1.

[7] Wellington argued that Delaware law requires two or more persons for a valid partnership. *See* Del. Code Ann. tit. 6, § 15-202(a), (b).

[8] *See Blue Canyon Well Ass'n v. Jevne*, 410 P.3d 251, 255 (N.M. Ct. App. 2017) (explaining that unincorporated associations have no legal existence and may not bring suit unless they comply with certain statutory requirements).

8

The district court treated the argument as a motion to reconsider the magistrate judge's ruling that MTGLQ was a limited partnership and declined to address it because Wellington had not complied with procedural rules regarding the filing of motions. *See id.* at 226.

With this background, we turn to the question at hand—may we review Wellington's appellate argument that MTGLQ is not a bona fide limited partnership and therefore lacks standing under New Mexico law? MTGLQ argues that we may not, because Wellington did not file objections to the magistrate judge's order denying her motion to amend the scheduling order.[9] We agree that Wellington did not file objections to the magistrate judge's order.[10] But as we recently clarified, that

---

[9] By operation of local rule, when this case was removed to federal court, a "pre-trial" magistrate judge was automatically designated "to preside over all non-dispositive pre-trial matters." D.N.M.LR-Civ. 73.1(a). The motion to amend involved a non-dispositive pretrial matter that magistrate judges may "hear and determine" when designated to do so under 28 U.S.C. § 636(b)(1)(A). Section 636(b)(1)(A) provides that "[a] judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." To obtain review by the district judge, Wellington needed to "serve and file objections to the order within 14 days after being served with a copy." Fed. R. Civ. P. 72(a).

[10] In reaching this conclusion, we recognize that Wellington's response to MTGLQ's motion to appoint a receiver, where she developed her argument that MTGLQ is not a bona fide limited partnership under Delaware law, was filed within 14 days of the magistrate judge's order denying the motion to amend the scheduling order. Thus, her response might be construed as a timely objection to the order. But D.N.M.LR-Civ 73.1(a) provides that "[o]bjections to a non-dispositive pre-trial matter decided by a pre-trial Magistrate Judge will follow the procedures and requirements set forth in D.N.M.LR-Civ 7.3, 7.4 and 7.5," which govern the filing of motions, and Wellington's response to the motion to appoint a receiver was not a motion. Hence, we understand the district court's procedural refusal to reconsider the magistrate judge's determination regarding MTGLQ's business status as based on

9

failure amounts only to waiver subject to our "firm waiver rule." *See Sinclair Wyo. Refin. Co. v. A & B Builders, Ltd.*, ___ F.3d ___, Nos. 19-8042 & 19-8053, 2021 WL 672247, at *22-23 (10th Cir. Feb. 22, 2021) (resolving intra-circuit conflict whether failure to object to magistrate judge's ruling on a non-dispositive matter constitutes waiver subject to firm waiver rule or jurisdictional bar to appellate review, and holding that "the firm waiver rule applies when a party fails to object to a magistrate judge's non-dispositive ruling under Rule 72(a)").

"Under the firm waiver rule, a party who fails to make a timely objection to the magistrate judge's ruling waives appellate review of both factual and legal questions." *Id.* at 22 n.23 (brackets and internal quotation marks omitted). Our firm waiver rule does not apply where "a *pro se* litigant has not been informed of the time period for objecting and the consequences of failing to object." *Morales-Fernandez v. INS*, 418 F.3d 1116, 1119 (10th Cir. 2005). Here, the magistrate judge's order denying Wellington's motion to amend the scheduling order did not provide this information regarding objections. Accordingly, the firm waiver rule does not bar our consideration of Wellington's argument.

---

Wellington's failure to separately file objections to the order denying the motion to amend the scheduling order. We see no abuse of discretion in the court's decision to do so, even though Wellington represented herself. *See McInnis v. Fairfield Cmtys., Inc.*, 458 F.3d 1129, 1147 (10th Cir. 2006) ("We review a district court's application of its local rules for abuse of discretion."); *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) ("[P]ro se parties [must] follow the same rules of procedure that govern other litigants." (internal quotation marks omitted)).

10

But Wellington faces a separate procedural hurdle—new-theory waiver on appeal. In this court, Wellington contends that MTGLQ is not a bona fide limited partnership because, after digging through its structural layers, there is only one entity involved—GSG—and "one single party cannot constitute a partnership." Aplt. Opening Br. at 18. Her sole support is that the formation of a partnership under Delaware law requires "the association of 2 or more persons," Del. Code. Ann. tit. 6, § 15-202(a), and "a common obligation to share losses as well as profits," *Ramone v. Lang*, No. 1592-N, 2006 WL 4762877, at *12 (Del. Ch. Apr. 3, 2006) (unpublished) (internal quotation marks omitted).

Wellington did not present this Delaware-law theory in her one-sentence argument to the magistrate judge, which did not rely on *any* legal authority. Wellington only advanced her Delaware-law theory in response to MTGLQ's motion to appoint a receiver, but the district court declined to consider this argument because Wellington did not properly present it. *See supra* note 10. Consequently, this improperly-presented theory does not alter application of our rule that we generally do not consider new theories raised on appeal for the first time. *See, e.g.*, *United States v. Leffler*, 942 F.3d 1192, 1196 (10th Cir. 2019) (discussing new-theory waiver rule); *Impact Energy Res., LLC v. Salazar*, 693 F.3d 1239, 1246 n.3 (10th Cir. 2012) (per curiam) (explaining that failure to raise issue at appropriate time in the district court waives appellate review).

Wellington's failure to properly raise her Delaware-law theory in the district court amounts to forfeiture, so she could seek plain-error review. *See Richison v.*

11

*Ernest Grp., Inc.*, 634 F.3d 1123, 1128 (10th Cir. 2011) (explaining that forfeiture occurs if a "theory simply wasn't raised before the district court" and is subject to review for plain error).  But to do that she had to "identify plain error as the standard of review in [her] opening brief and . . . provide a defense of that standard's application."  *Platt v. Winnebago Indus., Inc.*, 960 F.3d 1264, 1273 (10th Cir. 2020).

In the discussion of this issue in her opening brief, Wellington provides only a one-sentence reference to plain error.  Assuming that meets the first *Platt* requirement, it does not meet the second, because it targets the district court's refusal to address the issue, not the magistrate judge's ruling.  *See* Aplt. Opening Br. at 17 ("Wellington submits it was plain error for the trial court to dodge the issue instead of actually ruling on it.").  And we have found no abuse of discretion in the district court's ruling.  *See supra* note 10.  Accordingly, her "failure to argue for plain error and its application on appeal . . . marks the end of the road for [her Delaware-law argument]."  *Richison*, 634 F.3d at 1131.[11]  What remains is the undeveloped argument Wellington raised before the magistrate judge and the magistrate judge's ruling—that MTGLQ's structure met a law-dictionary definition of a limited partnership as consisting of one general partner and one limited partner.  Wellington has not shown this ruling was error, nor do we see any.

---

[11] Although "we have left open the door for a criminal defendant to argue error in an opening brief and then allege plain error in a reply brief after the Government asserts waiver," *Leffler*, 942 F.3d at 1198, we have not opened that door for civil litigants.  But even if we were to do so, Wellington's reply brief does not identify plain error as the standard of review for this issue or argue for its application on appeal.

Wellington contends that we may review MTGLQ's business status as a matter of Article III standing because "constitutional standing is a jurisdictional matter that must be addressed even if raised for the first time on appeal," *First Am. Title Ins. Co. v. Nw. Title Ins. Agency*, 906 F.3d 884, 889 (10th Cir. 2018). We reject this contention. A constitutional "standing challenge is not properly raised in connection with real party in interest analysis under Rule 17(a)." *K-B Trucking Co. v. Riss Int'l Corp.*, 763 F.2d 1148, 1154 n.7 (10th Cir. 1985). "Using the term 'standing' to designate real-party-in-interest issues tempts courts to apply standing principles outside the context in which they were developed." *FDIC v. Bachman*, 894 F.2d 1233, 1236 (10th Cir. 1990). "Even if standing jurisprudence is helpful by analogy in resolving real-party-in-interest issues, this does not convert real party in interest into a nonwaivable issue of subject matter jurisdiction." *Id.* Hence, lacking an independent duty to satisfy ourselves, as a jurisdictional matter, that MTGLQ is a bona fide limited partnership, we need not look beyond the limited argument Wellington presented to the magistrate judge and the magistrate judge's handling of that argument.

### B. Magistrate Judge orders concerning discovery

Wellington's second issue concerns the magistrate judge's orders (1) denying her motion to compel initial disclosures, (2) imposing monetary sanctions under Federal Rule of Civil Procedure 37(a)(5)(B) against Wellington for filing untimely motions to compel responses to interrogatories, and (3) granting MTGLQ's motion for a protective order. MTGLQ contends that because Wellington did not file

13

objections to any of those orders with the district court, she has waived appellate review of them. Wellington's failure to object to these non-dispositive rulings is indeed subject to our firm waiver rule. *See Sinclair Wyo. Refin. Co.*, 2021 WL 672247, at *22-23. But because none of the challenged orders informed Wellington of the time period for objecting or the consequences of failing to do so, the firm waiver rule does not apply. *See Morales-Fernandez*, 418 F.3d at 1119. We review these discovery rulings for an abuse of discretion. *See Punt v. Kelly Servs.*, 862 F.3d 1040, 1047 (10th Cir. 2017) (motion to compel discovery); *LaFleur v. Teen Help*, 342 F.3d 1145, 1152 (10th Cir. 2003) (protective orders regarding depositions); *Lancaster v. Indep. Sch. Dist. No. 5*, 149 F.3d 1228, 1236 (10th Cir. 1998) (Rule 37 sanctions). "An abuse of discretion occurs when a judicial determination is arbitrary, capricious or whimsical, and we will not overturn a discretionary judgment by the trial court where it falls within the bounds of permissible choice in the circumstances." *Punt*, 862 F.3d at 1047 (brackets and internal quotation marks omitted).

### 1. Initial disclosures

Wellington filed a motion to compel MTGLQ to disclose names and contact information of known witnesses and a computation of damages, as required by Federal Rule of Civil Procedure 26(a), claiming MTGLQ had failed to do so by the court-ordered deadline. In the alternative, she sought evidentiary exclusion of any undisclosed witnesses and damage computations under Federal Rule of Civil Procedure 37(c). She also asked the court to sanction MTGLQ at least $100. In its

14

response, MTGLQ disclosed names and contact information of five potential witnesses, all of whom worked for its loan servicer, Rushmore, stating it intended to call one of those witnesses to testify. In her reply, Wellington asked the court to strike allegations from the complaint regarding MERS's assignment of the Note because none of the witnesses MTGLQ identified were MERS employees.

The magistrate judge granted the motion in part (apparently based on her conclusion that disclosures MTGLQ provided to Wellington prior to her motion to compel were insufficient), but otherwise concluded that the issues Wellington raised were moot. The magistrate judge determined that MTGLQ satisfied the initial-disclosure requirements through a combination of the complaint, a Joint Status Report, an email to Wellington, and its response to the motion to compel. Although the witness disclosure did not include telephone numbers, the magistrate judge ordered MTGLQ's counsel to notify Wellington within seven days if counsel represented any of them (so Wellington could contact them through counsel) or otherwise to provide their telephone numbers. The magistrate judge rejected Wellington's argument that MTGLQ's counsel did not sign the disclosure documents, finding that each of the documents containing the disclosures was in fact signed. Because ample time remained in the discovery period, the magistrate judge concluded that any delay in providing the disclosures was harmless and therefore declined to exclude the information from the case. Finally, the magistrate judge declined to impose a monetary sanction on MTGLQ because Wellington, as a pro se party, was "not entitled to attorney's fees." Supp. R. Vol. I at 94.

15

Wellington complains the magistrate judge erred in deeming adequate the manner in which MTGLQ complied with the initial-disclosure requirement. She contends that Rule 26(a) contemplates the disclosures being made in one written document, and that the magistrate judge made three "unprecedented" determinations—that allegations in the complaint can constitute a computation of damages, that signatures on other documents can satisfy Rule 26(a)'s signature requirement, and that a witness's telephone number need not be disclosed if the witness is represented by counsel. Aplt. Opening Br. at 23-25. But she cites no authority for these contentions, and we therefore reject them.

Wellington claims MTGLQ provided only the amount of damages, not an actual computation. But this argument overlooks an attachment to MTGLQ's response to the motion to compel that itemized damages, which the magistrate judge considered in ruling that MTGLQ had provided an adequate computation of damages.[12]

Wellington also faults the magistrate judge's refusal to impose monetary or evidentiary sanctions. She asserts that by the time the magistrate judge ruled on the motion to compel, 120 of the 180 days for discovery had passed, and MTGLQ showed neither substantial justification for its failure to make the disclosures by the court's initial-disclosures deadline (August 3, 2018) nor harmlessness. *See* Fed. R.

---

[12] Although Wellington contests the method by which MTGLQ calculated damages, that is not germane to whether the magistrate judge's decision on the motion to compel was an abuse of discretion.

16

Civ. P. 37(c)(1) (providing that a party who fails to disclose information or a witness as required by Rule 26(a) may not use that information or witness to supply evidence "unless the failure was substantially justified or is harmless").  However, despite any failure MTGLQ may have made on these fronts, the magistrate judge reasoned that the delay in disclosure was harmless because there remained sufficient time for discovery, which was scheduled to close on February 1, 2019.  Wellington's contrary contention focuses on the amount of time remaining when the magistrate judge ruled on December 6, 2018.  This fails to appreciate that by August 31, 2018, when MTGLQ filed its response to her motion to compel, Wellington possessed all the documents the magistrate judge treated as satisfying Rule 26(a), which left her five full months of discovery.[13]

In sum, the magistrate judge's ruling was within the bounds of permissible choice in the circumstances.

### 2.  Monetary sanctions

Wellington filed motions to compel interrogatory responses from both MTGLQ and JPMC, each of whom had provided responses with objections.  The magistrate denied each motion as untimely under D.N.M.LR-Civ 26.6 and declined to

---

[13] Wellington points out that the magistrate judge did not rule on her request to strike certain allegations from the complaint.  But in denying reconsideration of her ruling, the magistrate judge explained that Wellington made this request in her reply to the motion to compel, which was improper.  *See* R. Vol. II at 185.

17

allow an extension of time.[14]  *See* Supp. R. Vol. I at 88-90, 95-98.  The magistrate

judge determined that Wellington had not shown either good cause for failing to

comply with the deadline or that an injustice would occur unless the deadline was

waived.  Pursuant to Federal Rule of Civil Procedure 37(a)(5)(B), the magistrate

judge ordered Wellington to pay reasonable expenses, including attorney's fees, that

MTGLQ and JPMC had incurred in responding to the motions.

Wellington sought reconsideration based on Rule 37(a)(5)(B)'s provision that

a court may not award expenses incurred in opposing a motion to compel discovery

"if the motion was substantially justified."  The magistrate judge rejected this

argument because she denied the motions to compel because they were untimely, not

on their merits, and Wellington failed to provide any explanation why the untimely

motions were substantially justified.  *See* R. Vol. II at 217-18, 221-22.

Wellington claims the magistrate judge erred by focusing the

substantial-justification inquiry on untimeliness.  She argues that the proper

consideration is whether her motions were substantially justified on the merits.  For

this proposition she relies on *Pierce v. Underwood*, 487 U.S. 552 (1988), which

explained that "substantially justified" as used in a fee-shifting statute (28 U.S.C.

§ 2412(d)(1)(A)) means "justified in substance or in the main—that is, justified to a

degree that could satisfy a reasonable person."  *Id.* at 565 (internal quotation marks

---

[14] The local rule requires a party served with objections to interrogatories to file any motion to compel within twenty-one days of service of the objections and permits the court to change that period for good cause.

18

omitted). The magistrate judge relied on *Pierce*'s interpretation in determining that Wellington's motions were not substantially justified because they were untimely and there was no reason to excuse the untimeliness. But Wellington's reading of *Pierce* is otherwise incorrect, because *Pierce* did not involve whether an untimely motion can nevertheless be substantially justified if, but for the untimeliness, a reasonable person would consider its merits justified in substance. Clearly, an untimely motion to compel discovery whose untimeliness is not entitled to be excused is not "substantially justified" under *Pierce*'s interpretation of that term. The magistrate judge properly focused on untimeliness of the motions, not whether they were substantially justified on the merits.

### 3. Protective order

Federal Rule of Civil Procedure 33(b)(5) requires that "[t]he person who makes the answers [to interrogatories] must sign them, and the attorney who objects must sign any objections." Wellington notified MTGLQ's counsel, Elizabeth Friedenstein, that she intended to take Friedenstein's personal deposition because she was the sole signatory witness on MTGLQ's answer to Wellington's first set of interrogatories and Friedenstein had received, and apparently was the custodian of, the mortgage documents. Friedenstein replied that she would not sit for a personal deposition, but Wellington served her with a deposition notice anyway. MTGLQ then moved for a protective order relieving Friedenstein of any duty to attend or respond to the deposition. The magistrate judge granted MTGLQ's motion, finding that, consistent with Rule 33(b)(5), Friedenstein had signed the objections, and a

19

verification signed by a Rushmore employee, Michael Bennett, on MTGLQ's behalf, satisfied the rule's verification requirement. *See* Supp. R. Vol. I at 100. The magistrate judge refused to allow the deposition to proceed on the basis that Friedenstein was the custodian of the mortgage documents because that implicated only the assignments of the Note and the mortgage, and the court had already ruled that Wellington lacked standing to challenge those and had dismissed her claims against Friedenstein. *See id.* The magistrate judge also pointed out that Friedenstein held the Note solely as MTGLQ's agent or bailee for purposes of the litigation. *See id.* n.1.

Wellington contends that Rule 33(b)(5) requires the person providing the answers to interrogatories to "sign the actual answering document" and, under Rule 33(b)(3), "do so under oath." Aplt. Opening Br. at 29 (emphasis omitted). We agree, but we also agree with the magistrate judge that this was done here. Friedenstein's signature appears after the last response to the interrogatories, indicates that the responses were "submitted by" her, and is unverified. Supp. R. Vol. II at 80-81 (capitalization omitted). The next page contains an exhibit list, and the following page is Bennett's signed verification stating that MTGLQ authorized him to verify the responses on its behalf and that MTGLQ's employees had assembled the responses with counsel's assistance. The verification is part of the "actual answering document." We therefore see no abuse of discretion in the magistrate judge's finding that Friedenstein's unverified signature pertains only to the objections (and hence did not make Friedenstein into a deposable witness), and

20

that Bennett's signed verification meets the rule's requirements that the answering

party provide a verified signature.

Wellington faults the magistrate judge's finding that the deposition would

focus only on her dismissed counterclaims and affirmative defenses. But she has not

identified any other topics, and merely holding the Note and mortgage documents as

MTGLQ's agent or bailee for litigation purposes did not convert Friedenstein into a

witness who may be deposed. Under these circumstances, we see no abuse of

discretion in granting the protective order.

## C.  Judgment in favor of MTGLQ

We perceive two arguments in Wellington's third issue:  (1) MTGLQ never

established standing under New Mexico law to enforce the Note or to foreclose and

(2) the district court should have excluded an affidavit MTGLQ submitted in support

of its motion for summary judgment.  We address these arguments in order.

### 1.  Standing under New Mexico law

Wellington argues that MTGLQ lacked standing under New Mexico law to

enforce the Note and foreclose on the property because it did not demonstrate a right

to do either.  We disagree.

The district court addressed standing to enforce the Note in an order denying

Wellington's motion to dismiss MTGLQ's complaint under Federal Rule of Civil

Procedure 12(b)(6).  *See* R. Vol. I at 248-52.  When it later granted summary

judgment to MTGLQ, the court considered it undisputed that MTGLQ was the holder

of the Note and therefore entitled to judgment on its claims against Wellington

21

personally. *See* R. Vol. II at 212. Thus, whether this standing issue is framed in terms of the district court's refusal to dismiss MTGLQ's complaint or its grant of summary judgment, our review is de novo. *See Rivero v. Bd. of Regents of Univ. of N.M.*, 950 F.3d 754, 758 (10th Cir. 2020) (summary judgment); *Albers v. Bd. of Cnty. Comm'rs*, 771 F.3d 697, 700 (10th Cir. 2014) (Rule 12(b)(6)).

In New Mexico, "a company claiming to be a mortgage holder must produce proof that it was entitled to enforce the underlying promissory note prior to the commencement of the foreclosure action by, for example, attaching a note containing an undated indorsement to the initial complaint." *Deutsche Bank Nat'l Tr. Co. v. Johnston*, 369 P.3d 1046, 1054 (N.M. 2016). The district court determined that MTGLQ met this burden by attaching a copy of the Note and the allonge to its complaint. The court further explained that because the most recent indorsement on the allonge was in blank, MTGLQ was the holder of the Note and therefore entitled to enforce it as bearer paper. *See* N.M. Stat. Ann. § 55-3-205(b) ("If an indorsement is made by the holder of an instrument and it is not a special indorsement, it is a 'blank indorsement'. When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specifically indorsed."). Finally, the court ruled that because Wellington failed to raise a genuine issue regarding the authenticity of the Note and the allonge, a copy of those documents was admissible under Federal Rule of Evidence 1003, which provides that "[a] duplicate is admissible to the same extent as the original unless a genuine

22

question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate."[15]

Before us, Wellington argues that MTGLQ was required to produce the original Note. In support, she relies on *Miller v. Deutsche Bank National Trust Co. (In re Miller)*, 666 F.3d 1255 (10th Cir. 2012). Although we fail to see where she raised this issue in the district court, *In re Miller* is readily distinguishable. There, a bank that held a copy of a note indorsed in blank argued that a Colorado statute concerning qualified holders permitted it to foreclose without presenting an original note to a public trustee. *Id.* at 1264-65. We rejected that argument because there was no evidence that the bank or its attorneys had complied or intended to comply with certain statutory requirements. *See id.* at 1265. In so doing, we did not craft a rule or imply that an original promissory note is required to foreclose under Colorado law, much less New Mexico law, which applies here.

Relatedly, Wellington argues that we should vacate the Judgment of Foreclosure because the district court did not comply with D.N.M.LR-Civ. 58.1. That rule sets out steps the district court is to take when a final judgment is based on a negotiable instrument: "The instrument must be . . . filed as an exhibit upon entry of judgment; merged into the judgment and marked as merged; and marked with the docket number of the action." *Id.* (bullet points omitted). Wellington also contends

---

[15] In the district court, Wellington argued that the Note was not authentic because it contained redactions and two extraneous swirl marks in the upper margin. Wellington does not raise these arguments on appeal.

these requirements indicate the original Note was required in this case. We are not persuaded. District courts have discretion in the application of their local rules, *see McInnis v. Fairfield Cmtys., Inc.*, 458 F.3d 1129, 1147 (10th Cir. 2006), so we will not void the Judgment of Foreclosure simply because the Note was not filed as an exhibit to it or marked as Rule 58.1 requires. And although Rule 58.1 might require production of an original negotiable instrument, it says nothing about whether a copy whose authenticity is unsuccessfully challenged is sufficient evidence of standing under New Mexico law.

As for standing to foreclose, Wellington argues that MTGLQ did not demonstrate it was a successor in interest to the mortgage because it provided no evidence supporting its allegations that the mortgage had been erroneously assigned to JPMC and later properly assigned to MTGLQ. But regardless of any uncertainty about the assignment, MTGLQ had the right to foreclose the mortgage because it had established a right to enforce the note. *See Flagstar Bank, FSB v. Licha*, 356 P.3d 1102, 1107, 1110 (N.M. App. 2015) (explaining that the holder of a note may enforce it, and "the right to foreclose the mortgage automatically follows the right to enforce the note"), *abrogated on other grounds as recognized in PNC Mortg. v. Romero*, 377 P.3d 461, 466-67 (N.M. App. 2016). We therefore reject Wellington's argument.

### 2. Bennett affidavit

In support of its motion for summary judgment, MTGLQ submitted an affidavit from Rushmore employee Michael Bennett. Bennett stated under penalty of perjury that MTGLQ possessed the original Note and was the assignee of the

mortgage, that Wellington was in default, and that she owed MTGLQ approximately $200,000. *See* R. Vol. II at 26-27. In support of the amount owed, Bennett attached a copy of MTGLQ's business records showing principal balance, interest owed, and various fees and charges. In opposing summary judgment, Wellington argued that Bennett's affidavit should be excluded because MTGLQ never disclosed Bennett as a witness, the business records attached to the affidavit were only a summary that was inadmissible hearsay, and MTGLQ failed to supply the underlying records.

The district court rejected these arguments. *See id.* at 205-11. The court determined that the failure to disclose Bennett as a potential witness was harmless because (1) Bennett had verified MTGLQ's responses to Wellington's first set of interrogatories; (2) Wellington did not follow through on deposing an MTGLQ representative; and (3) Wellington had not demonstrated bad faith or willfulness on MTGLQ's part. The court further concluded that the statements in the affidavit were admissible under the business-records exception to the hearsay rule, *see* Fed. R. Evid. 803(6), because (1) Wellington provided no evidence contradicting Bennett's statement that he was the attorney-in-fact for MTGLQ; (2) although Bennett worked for Rushmore, he was familiar with MTGLQ's business records through the regular performance of his job, he stated that he had personally examined them, and Rushmore necessarily incorporates MTGLQ's business records into its own business records in order to service loans and mortgages; and (3) the records otherwise met all the requirements of the business-records exception.

Wellington now complains that the district court made MTGLQ's arguments for it. While that appears true, it is equally the case that "[w]hen an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law," *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991). Wellington also reiterates the arguments she advanced in the district court. But we agree with the district court's analysis of the admissibility of Bennett's affidavit. We therefore reject Wellington's appellate arguments and uphold the district court's ruling on the affidavit for substantially the same reasons the district court provided.

### D. Wellington's claims

Wellington also challenges the district court's dismissal with prejudice of her first amended claim for declaratory relief against MTGLQ and JPMC and its denial of her motion for leave to file second amended FDCPA counterclaims as futile. We begin with the dismissal of her claim for declaratory relief.

Wellington sought a declaration that neither MTGLQ nor JPMC had any right against her or the property because neither had received a legitimate assignment of the mortgage and MTGLQ had never received a legitimate assignment of the Note. This claim is now moot in light of (1) the stipulated judgment JPMC and MTGLQ entered, in which JPMC disclaimed any right to the property; and (2) our conclusion that the district court properly determined MTGLQ had the right to enforce the Note as a holder, which gave MTGLQ the right to foreclose on the mortgage regardless of

26

any irregularities in the assignment of the mortgage. Under these circumstances, reversal and remand on Wellington's claim for declaratory relief would be ineffective because any success on that claim is now foreclosed. *See Miller ex rel. S.M. v. Bd. of Educ. of Albuquerque Pub. Schs.*, 565 F.3d 1232, 1251 (10th Cir. 2009) (explaining that the "inability to grant effective relief . . . renders [an] issue moot" (internal quotation marks omitted)).

We next turn to the district court's denial of Wellington's motion for leave to file a second amended complaint. Typically, we review the denial of leave to amend for abuse of discretion, but where, as here, the denial is based on a determination that amendment would be futile, we review de novo the legal basis for the finding of futility. *Id.* at 1249.

The district court dismissed Wellington's first amended FDCPA counterclaims without prejudice because she failed to allege facts plausibly suggesting that any of the defendants named in those claims (MTGLQ, its law firm, one of the firm's attorneys, and Rushmore) was a debt collector within the meaning of the FDCPA. In denying her motion for leave to file second amended counterclaims, the district court determined that although Wellington had now adequately alleged that the counterclaim defendants were debt collectors, allowing amendment of her FDCPA claims was futile on other grounds. We agree.

In her first counterclaim, Wellington sought damages against MTGLQ, its law firm, and the firm's attorney for filing the *in personam* claim against Wellington in New Mexico even though she resided in California and MTGLQ's complaint failed to

27

allege that she signed the Note in New Mexico. Her theory was that venue on the *in personam* claim was governed by 15 U.S.C. § 1692i(a)(2), which permits a debt collector to bring a legal action to collect on a debt from a consumer "only in the judicial district or similar legal entity—(A) in which [the] consumer signed the contract sued upon; or (B) in which [the] consumer resides at the commencement of the action." The district court denied leave to amend this counterclaim because Wellington did not allege that she signed the Note outside of New Mexico.

Wellington maintains that she alleged as much, and arguably, she is correct. *See* Supp. R. Vol. I at 67, ¶ 13 (alleging that "neither of [the locations for venue described in § 1692i(a)(2)] are/were New Mexico"). But this counterclaim fails for another reason, and we may affirm for any reason supported by the record, even if the district court did not rely on it, *Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 878-79 (10th Cir. 2017).

Section 1692i(a)(2) provides that its venue provisions apply only if an action is "not described in" § 1692i(a)(1). In turn, § 1692i(a)(1) describes a legal action brought by a debt collector "to enforce an interest in real property securing the consumer's obligation." In that case, the debt collector may bring the action "only in a judicial district or similar legal entity in which such real property is located." *Id.* Because MTGLQ brought this action not only to collect personally against Wellington but also to enforce the mortgage, § 1692i(a)(1) required MTGLQ to bring it in New Mexico. *See Suesz v. Med-1 Sols., LLC*, 757 F.3d 636, 639 (7th Cir. 2014) (en banc) (explaining that "[i]f real estate is security for the loan, the suit must be

28

brought where the property is located" pursuant to § 1692i(a)(1), and § 1692i(a)(2) does not apply where "the debt sued on is secured by real estate"). For this reason, we uphold the district court's denial of leave to file the proposed amended first counterclaim.

In counterclaims two, four, six, eight, nine, eleven, twelve, and thirteen, Wellington alleged violations of the FDCPA's prohibition on the use of "false, deceptive, or misleading representation[s] or means in connection with the collection of any debt," § 1692e. But these counterclaims alleged various misrepresentations that, under the law of the case, were not misrepresentations at all: (1) allegations in MTGLQ's complaint concerning the authenticity of the Note and the mortgage attached to the complaint, the mortgage's assignment history,[16] MTGLQ's right to payment on the Note, and the indorsements on the allonge; (2) allegedly "derogatory statements" Rushmore made to credit reporting agencies based on MTGLQ's "baseless" claims against her, Supp. R. Vol. I at 75-76, ¶¶ 66, 68; (3) recording in the county clerk's office of a notice that this action was pending, which, Wellington alleged, was a false communication to the general public that MTGLQ had a "legitimate claim against Wellington and the property," *id.* at 76-77, ¶ 73; and (4) letters Rushmore sent claiming Wellington owed MTGLQ on the Note despite

---

[16] Neither the district court nor this panel has addressed whether MTGLQ's allegations regarding the mortgage's assignment history were inaccurate. But because we have affirmed the district court's determination that the mortgage followed the Note, those allegations did not, as Wellington alleged in her ninth counterclaim, misrepresent "the character and legal status of the debt claim," Supp. R. Vol. I at 74, ¶ 57.

neither Rushmore nor MTGLQ having "any legitimate claim against Wellington," *id.* at 78, ¶ 78. Because the factual premise for these counterclaims fails, they are now moot, *see Miller ex rel. S.M.*, 565 F.3d at 1251, and we need not address the reasons the district court gave for denying leave to amend them.

Wellington's third counterclaim invoked § 1692f(1), which prohibits a debt collector from collecting or attempting to collect "any amount (including interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." Wellington alleged that the complaint's request for taxes, assessments, insurance, and other expenses, plus 5.75% interest, violated § 1692f(1) because the Note does not provide for such amounts. The district court denied leave to file this proposed amended counterclaim because the Note expressly provided that the interest rate before and after default was 5.75%, and that in the case of default, the holder could require Wellington to immediately pay outstanding principal and interest and could recover "costs and expenses in enforcing [the] Note," R. Vol. I at 28. Wellington argues only that the Note did not provide for collection of these amounts. That argument is frivolous; the Note expressly authorizes collection of those amounts.

In her fifth counterclaim, Wellington alleged that the law firm and its attorney falsely represented in the complaint that MTGLQ had notified Wellington of the default and demanded payment, in violation of § 1692e. The district court considered the amendment futile because the allegation was inconsistent with an allegation in Wellington's proposed amended thirteenth counterclaim that Rushmore contacted her

30

on MTGLQ's behalf about default and mitigation options. Wellington essentially argues that she could plead in the alternative, but given the allegation in the thirteenth counterclaim, the allegations of the fifth counterclaim were not entitled to any presumption of truth. Therefore, the district court did not abuse its discretion in denying leave to file this counterclaim.

Wellington's seventh counterclaim alleged violations of § 1692e and § 1692g(b) against the law firm and its attorney. Section 1692g(a)(3) requires a debt collector to send a consumer notice that she has 30 days to dispute the debt. If the consumer contests the debt in writing within the 30-day period, § 1692g(b) requires the debt collector to cease collection until it sends verification of the debt to the consumer. Wellington alleged that a notice attached to the complaint violated § 1692g(b) and was a § 1692e misrepresentation because the notice informed Wellington that although she had 30 days to dispute the validity of MTGLQ's debt claim, collections efforts could commence immediately. The district court considered the amended counterclaim futile because Wellington did not allege that she attempted to obtain verification of the debt or that defendants failed to provide verification or to cease collection until providing verification. Wellington argues that whether she requested verification is immaterial to whether there was a misrepresentation. We disagree. By its plain terms, § 1692g(b) requires only that a debt collector cease collection efforts after a consumer makes a timely request for verification. *See* § 1692g(b) ("Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to

in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor."). The proposed amendment of this counterclaim was not only futile, it was frivolous.

In her tenth counterclaim, Wellington alleged a violation of § 1692e based on the fact that MTGLQ named her "unknown spouse" as a defendant and served him with a summons. She claimed this "caused consternation and marital discord between Wellington and her husband," Supp. R. Vol. I at 75, ¶ 61, because the property was always Wellington's separate property under California law, and the law firm and its attorney knew this or should have known this. The district court denied leave to file this counterclaim because Wellington lacked standing to sue on her spouse's behalf. Wellington argues that the court erred because she alleged that she sustained damages from this alleged misrepresentation. Even so, we think this counterclaim fails for a more fundamental reason. In naming the spouse, MTGLQ alleged that he "may claim an interest in the subject Property by reason of Marriage." R. Vol. I at 24. It was not a misrepresentation to allege that Wellington's spouse *might* claim an interest in the property by virtue of the marriage regardless of whether he could do so successfully. Lacking a misrepresentation, allowing amendment of this counterclaim would have been futile.

Finally, Wellington faults the district court for not explaining why further amendment would be futile because she could have easily corrected any deficiencies in her proposed second amended complaint. However, the requirement to explain

32

why further amendment would be futile applies where a district court dismisses a pro se litigant's complaint for failure to state a claim. *See Kay v. Bemis*, 500 F.3d 1214, 1217 (10th Cir. 2007) ("Dismissal of a pro se complaint for failure to state a claim is proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend."). Here, the district court did not dismiss Wellington's proposed second amended complaint but only denied her leave to file it, and nothing in the district court's order suggests that Wellington could not try again. Accordingly, the court was not required to explain why further amendment would be futile.

## IV. CONCLUSION

For the foregoing reasons, we affirm in all respects.

Entered for the Court

Carolyn B. McHugh
Circuit Judge

33