WOOD, Chief Judge.
This is one of the flood of mortgage foreclosure cases that hit the country after the 2008 economic downturn. Before we can say anything about its merits, however, we must decide whether an appealable final judgment is before us. That question turns out to be more complicated than usual, given the many steps that must take place before the foreclosure process is complete. Here, the case has reached the point where the bank seeking to foreclose has secured a judgment of foreclosure and an order of sale pursuant to Illinois law. The district court declared that its judgment was “final,” but at the same time, it acknowledged that the public judicial sale could take place only after certain additional steps were completed, including the expiration of the statutory reinstatement and redemption periods to which the mortgagor was entitled under Illinois law. The court also noted that it would need to hold a hearing to confirm the sale (thereby ■ allowing it to go to closing) upon a party’s motion, and at such a hearing it could decide not to confirm the sale if, among other things, “justice was ... not done.”
Kirkland Townsend has brought an appeal from the rulings we have just described. Concerned about our appellate jurisdiction, we asked the parties for additional briefing on that point. Those briefs, plus our independent review of the case, convince us that the appeal must be dismissed for want of appellate jurisdiction.
I
In 2005, Townsend signed a promissory note for $136,000 with Fremont Investment & Loan. He needed the money to purchase a condominium in the South Shore neighborhood of Chicago. At the same time, Townsend executed a mortgage on the property, naming Mortgage Electronic Registration Systems, Inc. (MERS) as the mortgagee. (MERS was Fremont’s nominee.) After Townsend ceased making payments on his mortgage in 2011, MERS assigned the mortgage to HSBC Bank, USA; MERS remained Fremont’s nominee, however, for a junior mortgage Fremont held in the amount of $34,000. Shortly thereafter, HSBC filed a complaint against Townsend in the district court ask *774 ing for a judgment of foreclosure of the mortgage, sale of the condominium, and related relief under Illinois law. The district court’s subject-matter jurisdiction was based on diversity. See 28 U.S.C. § 1332(a)(1).
Representing himself, Townsend answered the complaint. HSBC then moved for summary judgment. It supported its motion with evidence showing that Townsend was in default; that he owed $141,425.65 on the note; and that HSBC owned both the note and the mortgage. Townsend failed to respond to HSBC’s motion, and so the district court granted it in open court on September 6, 2012. Later that day, it entered a written judgment of foreclosure, an order finding that Townsend owed the bank $143,569.65 (representing principal, interest, attorney’s fees, and costs), and an order providing for judicial sale of the property if Townsend did not pay before the redemption period expired. The court wrote that the judgment was “a final and appealable order” that was “fully dispositive” of all defendants’ interests for purposes of Federal Rule of Civil Procedure 54(b).
At the same time, the court retained “jurisdiction over the parties and subject matter of this cause for the purpose of enforcing th[e] Judgment or vacating said Judgment if a reinstatement is made as set forth in this Judgment.” The court acknowledged that “[ujpon motion and notice,” it would be required to hold a hearing to confirm the judicial sale pursuant to 735 ILCS 5/15-1508. After such a hearing, it could decide not to enter a confirmation order, if it found that appropriate parties did not receive proper notice of the-sale, if the terms of the sale were unconscionable, if the sale was conducted fraudulently, “or ... justice was otherwise not done.” Thirty days after the order confirming the sale, the purchaser obtains the right to possession of the property. 735 ILCS 5/15-1508(g). (This is a good time to observe that the word “sale” is used in several senses in the governing Illinois statutes: (1) as the formal judicially authorized event at which people bid for the property in foreclosure — we call this the “judicial sale” in this opinion; (2) as the confirmation of the judicial sale — the step, resembling closing, at which the purchaser’s right to a deed is established; and (3) as the final transfer of possession. We have attempted to be precise about which meaning is involved at various points in our discussion.)
Elsewhere in the judgment, the district court said that it would appoint a special commissioner to conduct the judicial sale according to instructions in the order. The court concluded that HSBC’s interest was superior to that of MERS (which as we have noted was still acting on Fremont’s behalf as nominee for its junior mortgage), it ordered that ultimately the proceeds of the sale would be paid out according to the terms of the judgment and 735 ILCS 5/15-1512. The judgment also provided that if the proceeds of a confirmed sale came up short, a deficiency judgment would be entered against Townsend for the difference.
After the parties submitted their briefs on Townsend’s pro se appeal of the district court’s foreclosure judgment, we ordered supplemental briefing on the question of appellate jurisdiction. We asked the parties to address whether (1) the district court improperly certified its judgment as final under Rule 54(b); (2) its judgment qualified as an appealable injunction under 28 U.S.C. § 1292(a); or (3) the doctrine of Forgay v. Conrad, 47 U.S. (6 How.) 201,12 L.Ed. 404 (1848), supported jurisdiction. We recruited attorney Kenneth J. Vanko to represent Townsend, and we are grateful to him for his able service to his client *775 and the court, and to all counsel for the helpful supplemental briefs.
II
We consider first whether we may hear Townsend’s appeal under the final judgment rule expressed in 28 U.S.C. § 1291. That provision states that the courts of appeals “shall have jurisdiction of appeals from all final decisions of the district courts of the United States.” As the Supreme Court recently reiterated, “[a] party can typically appeal as of right only from [a] final decision.” Bullard v. Blue Hills Bank, — U.S.-, 135 S.Ct. 1686, 1691, 191 L.Ed.2d 621 (2015). The first question before us is whether the district court’s disposition of Townsend’s case was final for purposes of section 1291.
Although section 1291 should be given “a practical rather than a technical construction,” the law’s “core application is to rulings that terminate an action.” Gelboim v. Bank of Am. Corp., — U.S.-, 135 S.Ct. 897, 902, 190 L.Ed.2d 789 (2015) (quotations omitted). Such a decision “ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.” Catlin v. United States, 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945). Several aspects of the district court’s ruling in this case convince us that it fails to meet this standard.
When all is said and done, the district court’s judgment of foreclosure and order to conduct a judicial sale leave too much up in the air for us to regard the action as terminated, with nothing left but the mechanical details of collection or other enforcement measures. Illinois law specifies the various steps that must be taken; it is the governing law in this diversity action, and so we must see how the district court’s actions fit into the regime Illinois creates for foreclosures. Like many states, Illinois protects mortgagors in foreclosure by giving them statutory periods of both redemption and reinstatement. The reinstatement statute permits the mortgagor to “reinstate the mortgage” by “curing all defaults then existing.” At that point, “the foreclosure and any other proceedings for the collection or enforcement of the obligation secured by the mortgage shall be dismissed and the mortgage documents shall remain in full force and effect as if no acceleration or default had occurred.” 735 ILCS 5/15-1602. The redemption statute speaks of the mortgagor’s ability to “redeem the real estate from the foreclosure,” 735 ILCS 5/15—1603(f)(1), and states that upon receiving the amount owed, the mortgagee “shall promptly furnish the mortgagor with a release of the mortgage or satisfaction of the judgment, as appropriate, and the evidence of all indebtedness secured by the mortgage shall be can-celled.” 735 ILCS 5/15—1603(f)(3).
This language indicates that the exercise of the right of either reinstatement or redemption has the potential to undo the foreclosure, scuttling the need for the process of executing the judgment. The district court was well aware of this: its foreclosure judgment explicitly incorporates these statutory rights, stating that “[t]he subject real estate shall be sold pursuant to statute at the expiration of both the reinstatement period and the redemption period.” This language indicates that the expiration of both of these periods—an event that will occur if a mortgagor fails to exercise either right—is a condition that must be satisfied before the initial judicial sale of the foreclosed property may proceed; closing, confirmation, and transfer cannot take place until the successful bidder is identified. As the Supreme Court noted years ago, “[a] question remaining to be decided after an order ending litigation on the merits does not prevent finality if its resolution will not alter the order or moot or revise decisions embodied in the *776 order.” Budinich v. Becton Dickinson & Co., 486 U.S. 196, 199, 108 S.Ct. 1717, 100 L.Ed.2d 178 (1988). But if the resolution of the outstanding question will either alter the order or moot or revise the resolution of the case, finality is lacking. In every case decided under Illinois law, entry of the foreclosure judgment marks the beginning of a period in which critical matters remain to be resolved: whether the mortgagor will exercise her statutory redemption and reinstatement rights, and, should a judicial sale occur, whether it complies with all statutory requirements.
Other aspects of Illinois law point in the same direction. The law expressly provides for a post-judicial-sale inquiry into whether “justice was otherwise not done” by the auction. 735 ILCS 5/15— 1508(b)(iv). The same provision directs the court on motion to determine whether proper notice of the sale was given and whether the sale was conducted fraudulently or with unconscionable terms. If the court finds any of these things to be true, it need not confirm the sale. Confirmation is therefore a critical step. Not until the court confirms the sale triggered by the judgment of foreclosure may it enter a deficiency judgment against the mortgagor. Damages are part of the judgment and essential to finality; lack of quantified damages prevents an appeal. See Liberty Mut. Ins. Co. v. Wetzel, 424 U.S. 737, 744, 96 S.Ct. 1202, 47 L.Ed.2d 435 (1976) (“[Wjhere assessment of damages or awarding of other relief remains to be resolved have never been considered to be ‘final’ within the meaning of 28 U.S.C. § 1291.”).
A number of questions remain about the damages Townsend will have to pay. The amount that the judicial sale yields depends not only on the price obtained at the auction but also on, for example, whether the auction was conducted in a commercially reasonable way to maximize the price. If it was not, the court might confirm the sale but decline to enter a deficiency judgment. See 735 ILCS 5/15— 1508(b)(2). A mortgagor might protest that an auction- delivering far below the amount specified in the foreclosure judgment was not conducted in the way most likely to attract a high bid. The district judge must then evaluate that assertion. If the judge decides that better advertising or other measures would have produced a bid closer to the full amount owed, he might either cut or deny any deficiency judgment. If there are serious defects in the auction, then the district court has the authority not to confirm the sale at all, and transfer of possession will never occur. The deficiency judgment amount might also depend on how much time elapses between the district court’s sale order (which quantifies the debt at that moment ) and the purchaser’s payment of the price at the auction. The longer the delay, the more prejudgment interest must be added under the terms of the note. This process is' far from mechanical. No one can know the amount of this part of the court’s judgment until the asset has been exchanged for money. That is fatal to finality.
Our dissenting colleague criticizes our description of Illinois law; he argues that Illinois courts have no discretion to reduce deficiency judgments. In taking the position that a deficiency judgment must, as a matter of law, be the difference between the default amount and the foreclosure sale price, however, our colleague principally relies on a case that cites a repealed section of the Illinois code. See Illini Fed. Sav. & Loan Ass’n v. Doering, 162 Ill.App.3d 768, 114 Ill.Dec. 454, 516 N.E.2d 609 (1987) (quoting Ill.Rev.Stat.1985, ch. 110, par. 15-112 (repealed 1987)). Even in Illini, the court acknowledged that the deficiency judgment should reflect the property’s sale price “absent any fraud or *777 irregularity in the foreclosure proceeding.” 114 Ill.Dec. 454, 516 N.E.2d at 611. The potential for irregularity .is exactly what concerns us here. And in any event, the current version of the law (which applied at the time of the events here) gives courts discretion over deficiency judgments. A judge’s order confirming a foreclosure sale “may also ... provide for a personal judgment against any party for a deficiency.” 735 ILCS 5/15 — 1508(b)(2); see. also 735 ILCS 5/15 — 1508(f) {“If the order confirming the sale includes a deficiency judgment....”) (emphases added in both). The statute uses the same discretionary language to discuss the amount of the judgment: the “judgment may be entered for any balance of money that may be found due to the plaintiff, over and above the proceeds of the sale or sales.” 735 ILCS 5/15-1508(e) (emphasis added). At most, some ambiguity may be introduced when the statute later states that a “court shall also enter” a deficiency judgment in a confirmation order. Id. Even that command is qualified, however, because the amount requested must be “proven” and the court must be “otherwise authorized” to enter the judgment. Id. The latter two safety valves logically refer back to the court’s ability to evaluate the fairness of the foreclosure process.
Nothing in the district court’s foreclosure and judicial-sale order in this case gives us reason to think that the remaining steps are so ministerial, inevitable, or unrelated to the merits of the case that they do not defeat finality. We take as a given that many orders confirming post-foreclosure judicial sales proceed -without a hitch (at least from the bank’s perspective). But that does not mean that the rights of redemption and reinstatement, or • the court’s review of the auction process, are meaningless. The Supreme Court of Illinois has said that the provision of section 15-1508(b)(iv) requiring review to see if “justice was otherwise not done” “acts as a safety valve to allow the court to vacate the judicial sale and, in -rare cases, the underlying judgment.” Wells Fargo Bank, N.A v. McCluskey, 376 Ill.Dec. 438, 999 N.E.2d 321, 329 (Ill.2013). Neither the percentage of cases in which this is found nor the narrowness of the legal standard matter: finality does not depend on the odds. The question is whether the existence of these rights, which are embedded within Illinois’s foreclosure scheme, renders a foreclosure and judicial-sale order non-final, when the sale is yet to be conducted and confirmation has not yet occurred. We believe that it does.
Finally, we note that our understanding of these statutes matches that of the Illinois courts. The Supreme Court of Illinois has said that it is “well settled” that a foreclosure judgment is not a final judgment “because it does not dispose of all issues between the parties and it does not terminate the litigation.” EMC Mortg. Corp. v. Kemp, 367 Ill.Dec. 474, 982 N.E.2d 152, 154 (Ill.2012). The court explained that “although a judgment of foreclosure is final as to the matters' it adjudicates, a judgment foreclosing a mortgage, or a lien, determines fewer than all the rights and liabilities in issue because the trial court has still to enter a subsequent order approving the foreclosure sale and directing distribution.” Id. Though the state’s view of finality for state-law purposes does not dictate the result for federal appellate jurisdiction, the Illinois court’s list of open questions is independently useful.
In sum, there are several events in Illinois that can or must occur between a foreclosure judgment entered pursuant to Illinois law and an eventual exchange of property for money and deficiency judgment. An order of foreclosure and judicial sale by itself, such as the one issued in *778 Townsend’s case, is thus not a final judgment under 28 U.S.C. § 1291.
Ill
Although we do not have jurisdiction to hear Townsend’s appeal under traditional finality doctrine, we still must ask whether there is some other basis of appellate jurisdiction. Three theories deserve a look, as our briefing order implied: first, the possibility that the court’s order was final as a “separate claim” under Federal Rule of Civil Procedure 54(b); second, the possibility that this is in effect an injunction eligible for interlocutory appeal under 28 U.S.C. § 1292(a)(1); and third, whether it may be immediately appealable under the doctrine announced in Forgay v. Conrad, 47 U.S. (6 How.) 201, 12 L.Ed. 404 (1848). We address each of these questions in turn.
A
The district court here certified the judgment of foreclosure and sale as final and appealable under Federal Rule of Civil Procedure 54(b). That does not dispose of the question, however; this court jnust consider for itself whether the judgment satisfies the requirements of that rule. Marseilles Hydro Power, LLC v. Marseilles Land & Water Co., 518 F.3d 459, 464 (7th Cir.2008); see also Wetzel, 424 U.S. at 740, 96 S.Ct. 1202 (rejecting Rule 54(b) certification). The operative language of Rule 54(b) is as follows: “When an action presents more than one claim for relief ... or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.”
There are two problems with the district court’s Rule 54(b) certification. First, the district court’s judgment left no claims unaddressed; any issues that may arise after this judgment form part of the main claim, not an independent one. By its terms, Rule 54(b) does not apply when there is no separate claim remaining to be decided. See Wetzel, 424 U.S. at 742-43, 96 S.Ct. 1202. Second, Rule 54(b) requires an express determination that there is no just reason for delay, and we find none on the record. Even if there were multiple claims or multiple parties, Rule 54(b) is unavailable without that certification. See Constr. Indus. Ret. Fund of Rockford v. Kasper Trucking, Inc., 10 F.3d 465, 467-68 (7th Cir.1993).
B
The next possibility requires us to decide whether the order directing the judicial sale of the property amounts to an injunction for purposes of 28 U.S.C. § 1292(a)(1). That statute authorizes interlocutory appeals from orders “granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions.” We have taken care to construe this provisión narrowly to avoid opening a floodgate to piecemeal appeals. Albert v. Trans Union Corp., 346 F.3d 734, 737 (7th Cir.2003); see also Tradesman Int’l, Inc. v. Black, 12A F.3d 1004, 1011 (7th Cir.2013). With that concern in mind, we have declined to characterize a decree foreclosing a mortgage and ordering sale as an injunction within the meaning of § 1292(a)(1). See United States v. Hansen, 795 F.2d 35, 38-39 (7th Cir.1986). Though a decree of foreclosure is an equitable remedy, we have made clear that “[n]ot every equitable order is an injunction for purposes of section 1292(a)(1),” and have concluded that foreclosure judgments fall outside of § 1292(a)(l)’s limits. Id. While it is apparent that foreclosure on a residence can eventually cause irreparable harm, Illinois courts and federal courts both are empowered to use stays pending appeal to man *779 age the risk of such harm by erroneous decisions. Compare Bullard, 135 S.Ct. at 1695-96 (ácknowledging that some bankruptcy confirmation orders may have “immediate and irreversible effects,” but nonetheless holding that an immediate appeal was unavailable and pointing out that several mechanisms to address such harm are available). We see no reason to depart from Hansen’s holding and thus decline to exercise jurisdiction to hear Townsend’s appeal under § 1292(a)(1).
C
We turn finally to the finality rule described in Forgay v. Conrad. That case, whose facts starkly remind the reader that times have changed, arose from a bankruptcy in Louisiana. The debtor had deeded away real estate and slaves in New Orleans, but the trial court had set aside those deeds as fraudulent transfers. Most importantly for present purposes, the trial court had then ordered that the real estate and slaves be delivered immediately to the person we would now call the trustee in bankruptcy. On appeal, the first issue was whether the transfer order was appealable. In an opinion by Chief Justice Taney, the Supreme Court denied a motion to dismiss the appeal. The Court held that the order was appealable because the parties in current possession of the real estate and slaves faced a threat of irreparable harm if an immediate appeal were not allowed. Forgay, 47 U.S. (6 How.) at 202-04.
We have interpreted Forgay to allow immediate review of an order “directing delivery of property where such an order would subject the losing party to irreparable harm.” United States v. Davenport, 106 F.3d 1333, 1335 (7th Cir.1997). The irreparable harm requirement avoids an unduly broad reading of Forgay under which “any order requiring immediate payment also is immediately appealable.” Cleveland Hair Clinic, Inc. v. Puig, 104 F.3d 123, 126 (7th Cir.1997).
When it comes to the forced sale of a residence, we can assume that the potential for irreparable harm is great. See Davenport, 106 F.3d at 1335. But under the Forgay doctrine, the issue for us is whether and when Townsend would face an imminent threat of irreparable harm if the judgment ordering foreclosure and judicial sale were not appealable. That question calls for a close examination of Illinois law and the procedures the district court would use to carry out the foreclosure and sale. See Aurora Loan Servs., Inc. v. Craddieth, 442 F.3d 1018, 1026 (7th Cir. 2006) (looking to state law settling title to property to determine when purchaser rights irreversibly attached); see also Fed. R. Crv. P. 69 (borrowing state procedures to execute federal court judgments).
Under Illinois law, the judgment of foreclosure and judicial sale posed no imminent threat of irreparable harm to Townsend. His interests are protected in several ways. First, a mortgagor may be able to take advantage of the redemption and reinstatement period before the judicial sale. See Kling v. Ghilarducci, 3 Ill.2d 454, 121 N.E.2d 752, 756 (1954). As we already have discussed, the sale cannot be conducted until this time has run. See 735 ILCS 5/15—1507(b).
After the judicial sale, the mortgagor is a big step closer property of all persons made party to the foreclosure “shall be terminated by the judicial sale of the real estate, pursuant to a judgment of foreclosure, provided the sale is confirmed.” 735 ILCS 5/15-1404; see also McCluskey, 376 Ill.Dec. 438, 999 N.E.2d at 330 (noting that it is the confirmation of sale that “divests the borrower of her property rights”). Immediately after the judicial sale and payment in full of the amount bid, the purchaser receives only a “certificate of sale.” See 735 ILCS 5/15-1507(f). (In residential foreclosures the defaulting *780 mortgagor-owner has a special, final thirty-day period for redemption when “the purchaser at the sale was a mortgagee who was a party to the foreclosure,” i.e., when a lender purchases the property, typically with a credit bid, for less than the amount needed to redeem. See 735 ILCS 5/15 — 1604(a).)
The transfer of rights memorialized by the certificate of sale becomes’ permanent only if the judicial sale is confirmed. Only after confirmation does the purchaser obtain a deed. 735 ILCS 5/15— 1509(a). The deed passes title to the purchaser, 735 ILCS 5/15 — 1509(b), and serves as “an entire bar of ... all claims of parties to the foreclosure,” 735 ILCS 5/15— 1509(c). Yet even then a mortgagor can delay the permanent transfer of title to the purchaser by obtaining a stay pending appeal of the order confirming sale. See III. Sup.Ct. R. 305(k) (under substantive state law, non-party purchasers gain property rights that are not impaired by reversal on appeal unless the sale is stayed); Aurora, 442 F.3d at 1026-27 (applying Illinois law and finding that “in the absence of a stay, a sale of real property to a third party bars an appeal from the judgment authorizing the sale”); Hansen, 795 F.2d at 39 (suggesting that defendants could avoid irreparable harm from sale by seeking a stay of the decree of sale); FDIC v. Meyer, 781 F.2d 1260, 1263 (7th Cir.1986) (in absence of stay, sale to good faith purchaser moots appeal); Horvath v. Loesch, 87 Ill.App.3d 615, 43 Ill.Dec. 154, 410 N.E.2d 154, 158 (1980). So long as a stay is in place, a purchaser at a foreclosure sale is obliged to return thé property if the judgment of foreclosure is reversed on appeal. See Wash. Mut. Bank, F.A. v. Archer Bank, 385 Ill.App.3d 427, 324 Ill.Dec. 182, 895 N.E.2d 677, 680 (2008) (permitting review of “all earlier nonfinal orders that produced the final judgment” embodied in the orders confirming the sale).
Thus, under Illinois mortgage foreclosure law, a mortgagor-owner who is residing in the property and taking care of it should not face the kind of immediate irreparable harm required by Forgay until there is time to file an appeal and to seek a stay of the final order confirming the judicial sale. Such an owner will ordinarily be entitled to retain possession of the property until thirty days after confirmation of the foreclosure sale. 735 ILCS 5/15— 1701(b)(1) & (c). (The statute also provides for exceptions when needed to protect the interests of the lender.) Under the Forgay doctrine, the issue is whether an immediate appeal is needed to prevent irreparable harm resulting from an immediate transfer of possession of the property. Illinois law provides a number of protections against irreparable harm, even though orders of foreclosure and judicial sale are not immediately appealable in state practice. Similarly, federal courts at every level have the authority to stay the effect of a judgment pending appeal, see Fed. R. Civ. P. 62, and so there is no need here to invoke the Forgay doctrine to allow an immediate appeal.
In light of this conclusion, we have no reason to reach the question whether the Supreme Court’s decision in Mohawk Industries, Inc. v. Carpenter, 558 U.S. 100, 130 S.Ct. 599, 175 L.Ed.2d 458 (2009), overruled the Forgay doctrine. While there is some tension between the Forgay doctrine and Mohawk Industries, see 558 U.S. at 106, 130 S.Ct. 599, and that tension has been reinforced by Bullard, the Court has not told us that Forgay has been overruled, and only it has the prerogative of overruling its own decisions. E.g., Nat’l Rifle Ass’n of Am., Inc. v. City of Chicago, 567 F.3d 856, 857-58 (7th Cir.2009), rev’d sub nom. McDonald v. City of Chicago, 561 U.S. 742, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010), quoting Rodriguez de Quijas v. Shearson/Am. Express, Inc., 490 U.S. 477, *781 484, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989).
IV
For all these reasons, we conclude that we do not have jurisdiction to hear this appeal, which is therefore Dismissed. Because the district court’s entry of the Rule 54(b) judgment compelled Townsend to appeal when he did, however, we order that the costs on appeal will be assessed against HSBC. See Fed. R.App. P. 39(a).