STATE OF MINNESOTA

IN SUPREME COURT

A24-1189

Court of Appeals                                                                    Gaïtas, J.

In the Matter of the Trust Created Under
Agreement by and Between Janet E. Johnson,
Settlor, and Paul Johnson, Successor Trustee,
dated July 15, 1998;

In the Matter of the Trust Created Under
Agreement by and Between Carroll A.
Johnson, Settlor, and Paul Johnson,
successor Trustee, dated July 15, 1998;

Nancy Patock and Susan Gerhardt,
Beneficiaries,

               Respondents,

and                                                                                 Filed:  September 24, 2025
                                                                                        Office of Appellate Courts

Paul Johnson, Successor Trustee,

               Appellant.

———————————————

Cletus J. Frank, Frank Law Office, P.A., Willmar, Minnesota, for respondents.

Richard C. Landon, Amy Erickson, Kiralyn Locke, Lathrop GPM LLP, Minneapolis, Minnesota, for appellant.

———————————————

1

1. The district court's order requiring the trustee to restore real property to two family trusts is not an order that "grants, refuses, dissolves or refuses to dissolve, an injunction" under Minnesota Rule of Civil Appellate Procedure 103.03(b), and therefore it is not immediately appealable under that rule.

2. The district court's order removing the trustee from two family trusts and appointing a successor trustee is not an order that "grants, refuses, dissolves or refuses to dissolve, an injunction" under Minnesota Rule of Civil Appellate Procedure 103.03(b), and therefore it is not immediately appealable under that rule.

Affirmed.

## O P I N I O N

GAÏTAS, Justice.

This case requires us to determine whether actions the district court took under Minnesota's Trust Code, Minnesota Statutes chapter 501C (2024), are immediately appealable under Minnesota Rule of Civil Appellate Procedure 103.03(b), which allows for an interlocutory appeal "from an order which grants, refuses, dissolves or refuses to dissolve, an injunction." Appellant Paul Johnson served as trustee of two family trusts that were established for the benefit of Johnson and his sisters, respondents Nancy Patock and Susan Gerhardt. In 2023, Patock and Gerhardt filed a petition in the district court seeking a declaratory judgment that Johnson breached his duties as trustee, requesting his removal as trustee, and demanding the return of disputed real property to the trusts. No formal injunction was sought. After an initial order granting Patock and Gerhardt's request for a

2

declaratory judgment, the district court issued an order removing Johnson as trustee, naming Patock as successor trustee, and ordering Johnson to restore the disputed property to the trusts. The district court also ordered Patock, the successor trustee, to investigate whether Johnson made any transactions that should be reimbursed to the trusts and to submit any reimbursement requests to the district court for approval; determined that Patock and Gerhardt were entitled to reimbursement for costs, disbursements, and attorney fees in bringing this action, and ordered them to submit those reimbursement requests for approval; and ordered ongoing review hearings until the trusts are terminated. Johnson appealed this interlocutory order, and the court of appeals dismissed the appeal as premature. We conclude that because the district court's order is neither an injunction nor the functional equivalent of an injunction, it is not immediately appealable under Rule 103.03(b), and the court of appeals did not err by dismissing the appeal as premature. We therefore affirm.

## FACTS

In 1998, Carroll A. Johnson and Janet E. Johnson, husband and wife, executed separate trust agreements in their respective names. Carroll A. Johnson, the last surviving settlor of the trusts, died in March 2016. Son Paul Johnson and daughters Nancy Patock and Susan Gerhardt were the surviving adult children and the beneficiaries of the trusts.

The trust agreements contained identical directions for what to do following the death of the last surviving parent: son Paul Johnson[1] would become the sole trustee of the

---

[1] All references to Johnson hereinafter are to son Paul Johnson.

3

trusts. As trustee, Johnson would be required to divide the trusts into three equal shares, one for each surviving child, and to distribute the income evenly among the children for seven years. Seven years after the death of the last surviving parent, the trusts would terminate,[2] and Johnson would be required to "distribute to [each] child their share of the entire remaining principal." Johnson could "make no distribution of principal prior to this date."

The siblings' father and last surviving parent, Carroll A. Johnson, died on March 10, 2016. At that time, Johnson became the sole trustee of his parents' trusts, and he assumed the responsibility of managing the trusts until March 10, 2023, when the trusts would terminate under the trust agreements.

The trusts included a variety of assets. The principal asset was a parcel of agricultural land in Sacred Heart, Minnesota. The trust agreements granted Johnson an option to purchase the property after the death of the last surviving parent. According to the trust agreements, "[u]pon the death of the Settlor and Settlor's spouse, the Trustee shall offer the. . . real property for sale to Paul Johnson," and the option would "cease upon [Johnson's] death or in the event of his failure within sixty (60) days to purchase the property after a written offer by the Trustee." Johnson moved into a residence on the property after his father's death in 2016, but he did not seek to exercise the option to purchase the property for several years.

---

[2] "[A] trust terminates to the extent the trust is revoked or expires pursuant to its terms, no purpose of the trust remains to be achieved, or the purposes of the trust have become unlawful, contrary to public policy, or impossible to achieve." Minn. Stat. § 501C.0410(a) (2024).

In December 2022, about three months before the trusts were to terminate, Johnson, in his capacity as trustee, gave himself, in his individual capacity, notice of the option to purchase the property. Shortly thereafter, Johnson purchased the property from the trusts for $2,384,649. To fund the purchase, Johnson secured several mortgage loans against the property.

About one month after Johnson purchased the property from the trusts, Patock and Gerhardt filed a petition under Minnesota Statutes section 501C.0202 seeking various forms of relief related to the administration of the "Janet E. Johnson Revocable Trust dated July 15, 1998." Later that year, Patock and Gerhardt filed an amended petition joining the "Carroll A. Johnson Revocable Trust dated July 15, 1998." In their petition and a related motion, Patock and Gerhardt asked the district court to, in relevant part: (1) determine that the purchase option granted to Johnson by the trusts terminated 60 days after the death of the last living settlor; (2) remove Johnson as trustee and appoint an independent trustee; and (3) order Johnson to return the agricultural property to the trusts, free of encumbrances, or to reimburse the trusts for the value of the property.[3]

On March 13, 2024, the district court issued an order addressing the purchase option. The district court found that "[t]he purchase option granted to Paul Johnson in the

---

[3]    The petition and motion also asked the district court to order Johnson to provide a complete accounting of his actions as trustee and to reimburse the trusts for costs related to the maintenance of the residence on the agricultural property; to order the trustee to distribute the trust property and incomes to the beneficiaries in equal shares; to allow all beneficiaries to access and divide the tangible personal property of the trusts; to directly supervise the administration, distribution, and termination of the trusts; and to approve payment of attorney fees from the trusts.

trust agreements lapsed sixty days after the death of Carroll Johnson in 2016" and, as a result, "Paul Johnson did not have a right to exercise the purchase option and purchase the trust property . . . in 2023." It further found that Johnson "breached his duty as trustee by acting outside the terms of the trusts and engaging as trustee in the sale of trust property for his own personal benefit." The district court reserved all other requests for relief and scheduled a status conference for the following month.[4]

Following an attempted mediation that did not resolve the outstanding issues, the district court held several status conferences, including one on July 16, 2024, during which Patock and Gerhardt reasserted their requests to remove Johnson as trustee, appoint a successor trustee, and restore the agricultural property to the trusts. The next day, July 17, 2024, the district court issued an order that addressed Patock and Gerhardt's requests for relief. In relevant part, the order (1) removed Johnson as trustee; (2) appointed Patock as successor trustee; and (3) directed Johnson to return "all real property deeded to himself from the trusts on or about January 12, 2023" and to take all "necessary actions to return the real property, unencumbered, to the trusts within 14 days" of the order.[5] Several

---

[4]     Johnson filed a notice of appeal to the court of appeals from the district court's March 2024 order. The court of appeals dismissed Johnson's appeal as premature because there were still outstanding issues for the district court to resolve. Johnson's attempt to appeal the March 2024 order is not at issue here.

[5]     The district court also addressed Patock and Gerhardt's other requests for relief. Specifically, the district court ordered Johnson to "immediately turn over all other trust assets in his possession to [Patock]," who would be responsible for distributing the trust assets pursuant to the trust agreements; ordered Johnson to "provide a complete accounting of all actions taken by him while trustee"; ordered Patock to "review trust records and investigate whether . . . Johnson made any transactions" requiring reimbursement to the

6

outstanding issues remained.  The district court reserved ruling on whether Johnson would be required to reimburse the trusts for any transactions.  The district court also concluded that Patock and Gerhardt were entitled to reimbursement from the trusts for reasonable attorney fees and costs in bringing this action, and ordered reimbursement requests to be submitted to the district court for approval.  Additionally, the district court ordered a review hearing and stated that it would retain in rem jurisdiction until the trusts are terminated.

Johnson appealed the July 2024 order to the court of appeals.[6]  The court of appeals questioned jurisdiction and ordered the parties to submit briefing to address whether the appeal was premature.  Relevant to this appeal, Johnson argued that the July 2024 order is appealable under Minnesota Rule of Civil Appellate Procedure 103.03(b), which authorizes an appeal "from an order which grants, refuses, dissolves or refuses to dissolve, an injunction."[7]  The court of appeals determined that the July 2024 order is not appealable

---

trusts; declared that Patock and Gerhardt are entitled to reasonable attorney fees; and asserted the court's continuing "jurisdiction in a supervised administration" until the trusts terminate.

[6]  On the same day that Johnson filed his appeal, Johnson also filed an alternative petition for discretionary review under Minnesota Rule of Civil Appellate Procedure 105.01, which authorizes the court of appeals to "allow an appeal from an order not otherwise appealable" in the interests of justice.  The court of appeals denied Johnson's request for discretionary review on the same day that it dismissed his appeal.  That order is not at issue here.

[7]  Johnson argued that the July 2024 order was appealable on two other grounds.  First, Johnson asserted that the order was appealable under Minnesota Statutes section 501C.0204, subdivision 1 of the Trust Code, which allows any party, in a case in which there has been a hearing of a petition, to appeal "an order which, in effect, determines the petition."  Second, Johnson argued that the order was appealable under Minnesota Rule of Civil Procedure 103.03(g), which authorizes an appeal "from a final order, decision or

7

under Rule 103.03(b) as an order that grants an injunction, reasoning that Patock and Gerhardt had not requested temporary or permanent injunctive relief and the order did not grant such relief. *In re Tr. Created Under Agreement by & Between Johnson & Johnson, dated July 15, 1998*, No. A24-1189, 2024 WL 4003155, at *2 (Minn. App. filed Aug. 27, 2024) [hereinafter *In re Johnson Trusts*].

Johnson petitioned for further review in this court, seeking review of whether the district court's order requiring him to transfer property to the trusts and removing him as trustee are immediately appealable under Rule 103.03(b), even though the district court did not name the order an "injunction" and even though the order granted permanent rather than temporary relief. We granted review.

**ANALYSIS**

In this case, we are asked to determine whether the district court's order granting various relief under the Trust Code is immediately appealable under Minnesota Rule of Civil Appellate Procedure 103.03(b), which allows for an appeal from "an order which grants, refuses, dissolves or refuses to dissolve, an injunction." The court of appeals determined that the district court's order is not immediately appealable under Rule 103.03(b). *In re Johnson Trusts*, 2024 WL 4003155, at *2. The court of appeals reasoned that the order "d[id] not involve a request for temporary relief pending the result

---

judgment affecting a substantial right made in an administrative or other special proceeding." The court of appeals determined that the order was not appealable on either ground because it did not resolve the outstanding reimbursement and attorney fees issues and therefore was not a final order that effectively determined the petition. The denial of appellate jurisdiction on those grounds was not raised in the petition for review and is not before us.

of a proceeding" but instead "granted requests for permanent relief" that "[t]he trust statute expressly allows the district court to grant." *Id.* The court of appeals also observed that Patock and Gerhardt "did not request a temporary or permanent injunction, and the July 17, 2024 order did not grant such relief." *Id.* Thus, the court of appeals concluded that the order is not an injunction or the functional equivalent of an injunction. *Id.*

Before us, Johnson contends that the court of appeals erred in dismissing his appeal because the district court's July 2024 order, which compels him to transfer property and removes him as trustee, "has the unmistakable characteristics of an injunction" and therefore is immediately appealable under Rule 103.03(b). We begin with a brief overview of the Trust Code and appellate jurisdiction over injunctions before turning to the district court's order.

Under the Trust Code, an "interested person," such as a trustee or a beneficiary, may petition the district court to resolve matters related to the administration of a trust. Minn. Stat. § 501C.0201; *see* Minn. Stat. § 501C.0202 (specifying the matters to which a petition may relate). Following a hearing on a trust petition, the district court has authority to "make an order it considers appropriate" under the Trust Code. Minn. Stat. §§ 501C.0203-.0204, .1001–.1004 (explaining the procedural requirements of hearings and orders and the remedies available to the district court).[8] When, as here, a district court determines that a trustee has violated a duty that the trustee owes a beneficiary, the Trust Code allows for specific relief, including the restoration of property to the trust, the

---

[8] The common law of trusts and the principles of equity supplement the Trust Code. Minn. Stat. § 501C.0106.

9

removal of the trustee, and the appointment of a successor trustee. Minn. Stat. § 501C.1001(b)(3), (7), (10) (authorizing the court to compel a trustee who has committed a breach of trust to redress the "breach of trust by paying money, restoring property, or other means;" to "remove the trustee as provided in [Minnesota Statutes] section 501C.0706;" and to "order any other appropriate relief"). Explicitly included among the statutory remedies for breach of trust—but not specifically ordered here—is that the court may "enjoin the trustee from committing a breach of trust." Minn. Stat. § 501C.1001(b)(2).

A party may appeal a district court's decision under the Trust Code to the court of appeals. In such cases, an order is appealable only if it "in effect, determines the petition." Minn. Stat. § 501C.0204. To the extent Johnson argued to the court of appeals that the July 2024 order is appealable under this statute, that issue was not raised to this court and is not before us.

The Minnesota Rules of Civil Appellate Procedure govern the appealability of district court decisions (including decisions under the Trust Code) and provide the procedures that apply on appeal. Minn. R. Civ. App. P. 101.01; *see* Minn. Stat. § 501C.0204. Generally, under these rules, only final judgments are appealable. *Reichel v. Wendland Utz, LTD*, 11 N.W.3d 602, 609 (Minn. 2024).

Here, Johnson no longer presses as he did before the court of appeals that the July 2024 order is a final order. And it is undisputed that the district court did not decide all the issues before it. Following the July 2024 order, several issues remained before the district court—reimbursement of the trusts for any transactions made by Johnson and

10

requests for costs, disbursements, expenses, and attorney fees. The district court set a future review hearing for the case.

Interlocutory appeals from decisions made before the district court has issued a final judgment resolving all claims by all parties are permitted only under limited circumstances. *Reichel*, 11 N.W.3d at 609. Such appeals "are disfavored because they 'may cause disruption, delay, and expense for litigants . . . .' " *Id.* (quoting *Emme v. C.O.M.B., Inc.*, 418 N.W.2d 176, 179 (Minn. 1988)). Interlocutory appeals "also burden appellate courts by requiring immediate consideration of issues which may become moot or irrelevant by the end of trial." *Emme*, 418 N.W.2d at 179. For this reason, the "thrust" of the Rules of Civil Appellate Procedure "is that appeals should not be brought or considered piecemeal." *Id.*

Nonetheless, our appellate rules allow interlocutory appeals under limited circumstances. As noted, Rule 103.03(b) permits an appeal "from an order which grants, refuses, dissolves or refuses to dissolve, an injunction." Minn. R. Civ. App. P. 103.03(b). We have held that this rule also allows interlocutory appeals from "orders that grant or deny injunctions in effect but not in name." *In re Estate of Figliuzzi*, 979 N.W.2d 225, 232 (Minn. 2022) (citing *Howard v. Svoboda*, 890 N.W.2d 111, 114 (Minn. 2017)).

To resolve this case, we must decide whether the district court's July 2024 order requiring Johnson to restore the agricultural property to the trusts, and removing Johnson as trustee and appointing Patock as successor trustee, is an injunction or the functional equivalent of an injunction that may be appealed under Rule 103.03(b). This requires us to interpret and apply the Rules of Civil Appellate Procedure, which present questions of

11

law that we review de novo. *See Figliuzzi*, 979 N.W.2d at 231. Likewise, issues of appellate jurisdiction are questions of law subject to de novo review. *Howard*, 890 N.W.2d at 114.

Although the district court issued just one order, Johnson points out that the order as relevant to this appeal granted two different types of relief—it required him to return real property to the trusts, and it removed him as trustee and appointed a successor trustee. Because Johnson contends that these two separate actions effectively constitute two injunctions, we address them separately. We first address Johnson's arguments related to the return of the real property, and then we consider Johnson's arguments regarding the removal of a trustee and the appointment of a successor trustee.

I.

Johnson contends that the district court's order requiring him to restore the agricultural property to the trusts is immediately appealable under Rule 103.03(b) because the order is the functional equivalent of an injunction. He also asserts that the order is immediately appealable under the United States Supreme Court's decision in *Forgay v. Conrad*, 47 U.S. 201 (1848), which created an exception to the final judgment rule for interlocutory orders mandating the immediate transfer of real property. Johnson urges us to adopt the "*Forgay* doctrine" by holding that an interlocutory order mandating the immediate transfer of real property is immediately appealable. We consider whether the order requiring Johnson to restore the property to the trusts is immediately appealable under Rule 103.03(b) before addressing Johnson's arguments related to *Forgay*.

12

## A.

Johnson first argues that the district court's July 2024 order requiring him to restore the agricultural property to the trusts is immediately appealable under Rule 103.03(b) as the functional equivalent of a mandatory injunction. He contends that the order commands him to take affirmative action—restoring the property to the trusts—to preserve the status quo until the district court reaches a final decision in the case. Johnson observes that this feature is a hallmark of a mandatory injunction.

Just because a court order "directs one party to affirmatively act . . . does not create an injunction." *Figliuzzi*, 979 N.W.2d at 233. To determine whether the district court's order requiring Johnson to restore the agricultural property to the trusts is the functional equivalent of an injunction, we must "examin[e] the key features" of both injunctions and the district court's order. *Id.* at 232.

We begin with the key features of injunctions. Injunctions may be equitable or statutory. *See State v. Minn. Sch. of Bus.*, 899 N.W.2d 467, 471–72 (Minn. 2017). To obtain an equitable injunction, a party must establish that the available legal remedy is inadequate and that an injunction is necessary to prevent great and irreparable harm. *Cherne Indus., Inc. v. Grounds & Assocs., Inc.*, 278 N.W.2d 81, 92 (Minn. 1979) (citations omitted). There are certain fundamental factors that a court considers when determining whether to grant injunctive relief. When deciding whether a temporary equitable injunction is warranted, a court considers the nature and background of the parties' relationship; the balance of the harms between the parties; each party's likelihood of success on the merits; public policy considerations; and the administrative burden of awarding temporary

13

injunctive relief. *Dahlberg Bros., Inc. v. Ford Motor Co.*, 137 N.W.2d 314, 321–22 (Minn. 1965). Separately, statutory injunctions are provided for by statute, and "[t]he conditions that must be met to grant a statutory injunction are determined by the text of the statute authorizing the injunction." *Minn. Sch. of Bus.*, 899 N.W.2d at 471–72.

Injunctions may also be preventative or mandatory. *Figliuzzi*, 979 N.W.2d at 232. But in either instance, "the preservation or restoration of the status quo . . . is generally a key feature of injunctions." *Id.* at 233. A preventative injunction *prohibits* a party from acting and *preserves the status quo* until the district court determines the respective rights of the parties. *Id.* at 232. On the other hand, "a mandatory injunction *requires a party to act*, which sometimes may change the status of the parties, but still very often with the goal and effect of *restoring the original status quo*." *Id.* (emphasis added) (citing *Bellows v. Ericson*, 46 N.W.2d 654, 658–59 (Minn. 1951)).

Johnson contends that the district court's July 2024 order is the functional equivalent of a mandatory equitable injunction. Thus, we next examine whether the order has features of a mandatory equitable injunction. This requires is to consider "whether the [district] court analyzed the motion or petition as one requesting an injunction, whether it reviewed any of the equitable factors for injunctive relief, or whether it considered the merits of the underlying action when addressing the requested relief." *Id.* at 233; *see also Howard*, 890 N.W.2d at 114–15; *City of Rochester v. Kottschade*, 896 N.W.2d 541, 545 n.1 (Minn. 2017). "[W]e need not mark the precise boundary of what orders are, and are not, injunctions." *Howard*, 890 N.W.2d at 114. Instead, we need only evaluate the relevant

considerations to determine whether the district court effectively granted injunctive relief that is appealable under Rule 103.03(b). *Id.* at 114–15.

Evaluating those considerations, we conclude that the district court's July 2024 order is not the functional equivalent of an injunction. Two considerations clearly weigh against determining that the order granted injunctive relief. First, Patock and Gerhardt did not expressly seek an injunction in their petition filed under the Trust Code. Patock and Gerhardt alleged that Johnson breached his duties as trustee and requested relief provided by the Trust Code for Johnson's breach of the trusts. Second, the district court did not analyze the petition as a request for injunctive relief. Specifically, the district court did not consider whether an injunction was necessary to prevent irreparable harm, whether Patock and Gerhardt had an adequate remedy at law, or whether injunctive relief was appropriate considering the equitable factors that courts weigh when deciding a motion for a temporary injunction. *See Cherne Indus.*, 278 N.W.2d at 92; *Dahlberg*, 137 N.W.2d at 321.

As to the last consideration, the district court's July 2024 order likely *did* consider the merits of the underlying petition because it incorporated the district court's March 2024 order, which concluded that Johnson "breached his duty as trustee by acting outside the terms of the trusts and engaging as trustee in the sale of trust property for his own personal benefit." A district court's consideration of the merits of the underlying action may weigh in favor of determining that an order is appealable as the functional equivalent of an injunction. *See Howard*, 890 N.W.2d at 115 (citing *Int'l Prods. Corp. v. Koons*, 325 F.2d 403, 406 (2d Cir. 1963) (explaining that appealable injunctions provide "some or all of the substantive relief sought by a complaint" but do not include "restraints or directions in

15

orders concerning the conduct of the parties or their counsel, unrelated to the substantive issues in the action, while awaiting trial")). Here, however, we conclude that this circumstance weighs *against* determining that the July 2024 order is the functional equivalent of an injunction.

We reach this conclusion because, contrary to Johnson's assertion that the July 2024 order merely preserved the status quo until the district court could reach a final decision, the district court *did* reach a decision as to whether Johnson breached his duties as the trustee in its March 2024 order. Again, the district court found that Johnson breached his duties as the trustee. Then, the district court's July 2024 order imposed a statutory remedy—not to preserve the status quo—but to address the breach of the trusts. *See* Minn. Stat. § 501C.1001(b)(3) (stating that a district court may compel a trustee to restore property to a trust as a remedy for breach of trust). The July 2024 order directed Johnson to restore the property to the trusts, as authorized by the Trust Code, while reserving a decision on Patock and Gerhardt's other requested remedies. Under these circumstances, the district court's consideration of the merits of the underlying action, which led the district court to grant some of Patock and Gerhardt's requested relief, indicate that the district court's July 2024 order is not the functional equivalent of an equitable injunction to preserve the status quo, but instead, a nonfinal decision on the merits.

This conclusion is further supported by our case law. In *Figliuzzi*, we considered whether a constructive trust is an injunction for purposes of Rule 103.03(b), and we concluded that "[a]lthough a constructive trust directs one party to affirmatively act by conveying property to another, it does not create an injunction." 979 N.W.2d at 232–33.

16

We emphasized in reaching this conclusion that imposing a constructive trust does not relate "to the preservation or restoration of the status quo, which is generally a key feature of injunctions." *Id.* at 233. As noted here, the district court's July 2024 order directing Johnson to restore the agricultural property to the trusts was not an attempt to restore the status quo pending a decision on the merits. It was an attempt to "right a wrong" under the Trust Code. *Id.* (stating that a constructive trust does not preserve the status quo, but rather, it attempts to "right a wrong"). Moreover, as in *Figliuzzi*, the district court here "did not analyze the request . . . as one for injunctive relief[,]" and it "did not review the equitable factors for injunctive relief." *Id.* Thus, the district court's order is not the functional equivalent of an injunction that is immediately appealable under Rule 103.03(b).

Johnson contends that "the fact that certain forms of relief are outlined in the Minnesota Trust Code does not negate their injunctive effect." However, we are not persuaded by this argument. We have already concluded that the district court's July 2024 order did not have an "injunctive effect." Moreover, the Legislature knows how to explicitly provide for a statutory injunction when it wants to do so. *See In re Benson*, 12 N.W.3d 711, 717 (Minn. 2024) (explaining that the Legislature could have made the right to counsel unwaivable, as it did in other statutes). One of the remedies for a breach of trust under the Trust Code is that a court may "enjoin the trustee from committing a

breach of trust." Minn. Stat. § 501C.1001(b)(2). But that is not the relief that the district court ordered here, and Johnson does not argue otherwise.[9]

Finally, Johnson cites *Bellows* for the proposition that an injunction lies any time the district court "commands the doing of some positive act." *See* 46 N.W.2d at 658. Johnson reads *Bellows* too broadly. Johnson is correct that *Bellows* describes "[a] mandatory injunction" as an injunction that "commands the doing of some positive act by the defendant." *Id.* But this statement merely clarifies that "command[ing] the doing of some positive act by the defendant" is *necessary* for an order to be considered a mandatory injunction; it does not establish that this feature is *sufficient* to create a mandatory injunction. In other words, an order may "command[] the doing of some positive act" without being an injunction, as we since clarified. *See Figliuzzi*, 979 N.W.2d at 233 ("Although a constructive trust directs one party to affirmatively act by conveying property to another, it does not create an injunction."). Moreover, extending the right to appeal to any order that "commands the doing of some positive act" risks opening the floodgates to interlocutory appeals and conflicts with our policy against considering piecemeal appeals. *See Emme*, 418 N.W.2d at 179 ("[T]he thrust of the rules governing the appellate process is that appeals should not be brought or considered piecemeal."). We decline to interpret Rule 103.03(b) as allowing interlocutory appeals in such wide-ranging circumstances.

---

[9]    The Legislature also expressly provided for injunctive relief under a related chapter, the Charitable Trust Code. *See* Minn. Stat. ch. 501B (2024). The Charitable Trust Code authorizes the Attorney General to request and obtain injunctive relief to remedy a breach of a charitable trust. Minn. Stat. § 501B.41, subd. 7(1). But the Trust Code contains no such provision.

In sum, the July 2024 order requiring Johnson to restore the agricultural property to the trusts is not the functional equivalent of an injunction. Thus, the order is not immediately appealable under Rule 103.03(b) as an order "which grants . . . an injunction."

B.

Johnson next argues that allowing an immediate appeal of the district court's order requiring him to restore the agricultural property to the trusts would be consistent with the United States Supreme Court's decision in *Forgay v. Conrad*, 47 U.S. 201 (1848).[10] In *Forgay*, the Supreme Court created a common law procedural rule that allows a party to appeal an interlocutory order mandating the immediate transfer of property from one party to another. 47 U.S. at 204–05.[11] The Supreme Court determined that a party could immediately appeal such an order because, without a right to an immediate appeal, the party faced "irreparable injury"—namely, the permanent deprivation of their property without an opportunity to be heard in defense of their rights. *Id.* at 204. Johnson contends

[10] We note that Johnson did not raise any issues related to *Forgay*, 47 U.S. at 201, in his petition for further review. "Generally, we do not address issues that were not raised in a petition for [further] review." *In re GlaxoSmithKline PLC*, 699 N.W.2d 749, 757 (Minn. 2005). Because Johnson argues that we should interpret Rule 103.03(b) to be consistent with *Forgay*, and Johnson's arguments under Rule 103.03(b) are properly preserved, we address Johnson's argument related to *Forgay*, even though it is arguably forfeited.

[11] *Forgay* was decided before slavery was abolished in the United States, and it centers on a dispute over real property and enslaved persons. *See* 47 U.S. at 202. As such, the facts of *Forgay* are a blunt reminder of a dark period in our nation's history. *See HSBC Bank USA, N.A. v. Townsend*, 793 F.3d 771, 779 (7th Cir. 2015) (noting that the facts of *Forgay* "starkly remind the reader that times have changed").

that he "faces the precise hardship and irreparable injury identified in *Forgay*" and that allowing him to appeal the district court's order would be consistent with this decision.

We are not convinced. Initially, we emphasize that we have never adopted the *Forgay* doctrine. But even if we had, it would not apply under the circumstances of this case. Johnson overlooks a key exception to the *Forgay* doctrine. In *Forgay*, the Supreme Court stated that the doctrine "*does not* extend to cases where money is directed to be paid into court, or property to be delivered to a receiver, or *property held in trust to be delivered to a new trustee* appointed by the court, or *to cases of a like description*." *Forgay*, 47 U.S. at 204 (emphasis added). Therefore, contrary to Johnson's argument, allowing Johnson to appeal the order requiring him to restore the agricultural property to the trusts would be *inconsistent* with *Forgay*, and that case does not help him here.

\* \* \*

We are not persuaded by Johnson's arguments that the district court's July 2024 order requiring him to restore the agricultural property to the trusts is appealable under Rule 103.03(b). The order is not an injunction or the functional equivalent of an injunction. And the order is not appealable under the *Forgay* doctrine, even if we assume without deciding that the doctrine applies in Minnesota.

## II.

Johnson next contends that the district court's order removing him as trustee and naming Patock as successor trustee "has the characteristics of a mandatory injunction" because it "restrains Johnson from continuing his duties as [t]rustee and instead compels

20

Patock to take on those responsibilities." Johnson asserts that these "characteristics" make the order "akin" to an injunction that is immediately appealable under Rule 103.03(b).

We disagree. As with the district court's order requiring Johnson to restore the agricultural property to the trusts, the district court's order removing Johnson as trustee and appointing Patock as successor trustee is not the functional equivalent of an equitable injunction. Again, Patock and Gerhardt did not seek an injunction, and the district court did not analyze their petition as a request for injunctive relief. Moreover, the district court did not address any of the equitable factors that courts consider when determining whether an injunction is appropriate. Instead, the district court granted relief under the Trust Code based on its previous determination that Johnson committed a breach of trust. And based on that determination, the district court's order did not preserve the status quo but instead removed Johnson as trustee and appointed a new successor trustee. For these reasons, the district court's order removing Johnson as trustee is not the functional equivalent of an equitable injunction. *See Figliuzzi*, 979 N.W.2d at 232–33.

Likewise, the district court's removal of Johnson as trustee is not a statutory injunction. Instead, it is other legal relief that the Trust Code authorizes when a trustee commits a breach of trust. The Trust Code empowers the district court to remove a trustee in two ways. Minn. Stat. §§ 501C.1001(b)(7), 501C.0706(b)–(c). First, the court may *permanently* remove a trustee for certain enumerated reasons, including "a serious breach of trust." Minn. Stat. § 501C.0706(b). Second, the court may *temporarily* remove a trustee "as may be necessary to protect the trust property or the interests of the beneficiaries." *See* Minn. Stat. § 501C.0706(c) (authorizing the court to "order such appropriate relief under

21

section 501C.1001, paragraph (b)" pending a final decision on whether to remove the trustee); Minn. Stat. § 501C.1001(b)(7) (authorizing the court to "remove the trustee as provided in section 501C.0706"). Here, the district court *permanently* removed Johnson as trustee under section 501C.0706(b). In doing so, the district court granted permanent relief based on Johnson's breach of trust—it *did not* provide provisional relief pending a final decision on the merits. Because the district court's removal of Johnson as trustee under section 501C.0706(b) is not a statutory injunction in name or in nature, it is not appealable under Rule 103.03(b) as an order "which grants . . . an injunction." *See Minn. Sch. of Bus.*, 899 N.W.2d at 471–72.[12]

## CONCLUSION

For the foregoing reasons, we affirm the decision of the court of appeals.

Affirmed.

---

[12] As discussed above, in dismissing Johnson's appeal as premature, the court of appeals explained that the district court's July 2024 order is not an injunction because it "granted requests for permanent relief" under the Trust Code, not requests "for temporary relief pending the result of a proceeding." *In re Johnson Trusts,* 2024 WL 4003155, at *2. Johnson argues that the court of appeals improperly distinguished between permanent and temporary injunctions, because both are appealable under Rule 103.03(b). Johnson points to our decision in *City of Waconia v. Dock*, where we held that an order granting a permanent injunction is immediately appealable under Rule 103.03(b). 961 N.W.2d 220, 228 (Minn. 2021).

We discern no error in the court of appeals' reasoning. As we conclude above, the district court granted legal relief under the Trust Code based on Johnson's breach of trust; it did not grant an equitable or statutory injunction or the functional equivalent thereof.